D. GELSTON *against* CODWISE, MORRIS, MOWATT, AND OTHERS.

On *appeal* from this court, the decree or order of the court for the correction of errors becomes, to this court, the law of the case ; and the party can have no other, or further relief, than what is administered by the decree of the court above.

THE bill gave a summary of the suits and proceedings of *Codwise* and others against *Sands* and others, of whom the plaintiff was one, and on a petition presented to this court by *Gelston*, the order of the courts thereon, and the decree of the court for the correction of errors, on appeal.  It is unnecessary to detail the voluminous proceedings in these causes. The substance of them is to be found in the reports.  (10 *Johns. Rep.* 507—524.)

The material facts are, that certain real estates of *Comfort Sands*, a bankrupt, at *Brooklyn*, and in *Pine* and *Cedar-streets*, in *New-York*, the conveyances of which, by the bankrupt, had been set aside as fraudulent, were ordered to be sold by the master, and the money brought into court, to be distributed among the creditors of *Sands*.  The plaintiff, a judgment creditor, pending an appeal in the original suit, (4 *Johns. Rep.* 636.,) presented his petition, stating his judgment as a *lien* on the real estate of *Sands*, and praying an order for the payment of the amount, after the satisfaction of prior encumbrances; the hearing of the petition was deferred until the fund was brought into court.  Pursuant to the decree of the court above, the moneys were ordered, on the 25th of *June*, 1808, to be paid over to the assignees of the bankrupt.  In *March*, 1809, the bill, as it regards *Gelston*, and his petition, were heard, and the bill dismissed, with costs.

In *February*, 1810, *Gelston* presented another *petition*, stating mistakes in drawing up the decree, in ordering his judgment to be paid, according to its priority, in preference to the general creditors, nor the priority of the liens to be ascertained and settled ; and because the decree made no order or direction allowing or dismissing the former petition ; and he, therefore, prayed *a rehearing* on those two points : and this petition for a rehearing was, on the 12th of *September*, 1810, dismissed with costs. The court for the *correction of errors*, in *March*, 1812, on appeal from this decision, as well as on a *cross appeal* from the decree of the court, in *September*, 1809, dismissing the bill against *Gelston*, ordered the cross appeal to be dismissed, with 100 dollars costs, and the decree of this court to be affirmed : and that court, " further considering that the moneys arising from the real estate, formerly of *Comfort Sands*, in *Brooklyn*, in the pleadings mentioned, and which are now in the court of chancery, or may hereafter be brought therein, ought, (after paying costs, &c.,) to be applied to the payment and satisfaction of the judgment creditors of *Comfort Sands*, whose judgments were docketed previously to the bankruptcy of *Comfort Sands*, according to the priority of the time of docketing, in preference to the other creditors of *Comfort Sands ;*" " ordered, adjudged, and decreed, that the order of the court of chancery, of the 12th of *September*, 1810, be, and the same is hereby reversed ;" and it further " ordered, that the cause be remanded to the court of chancery, to the end, that the court may direct an inquiry, &c., and what judgments remain open, unsatisfied of record, against *Comfort Sands*, and which were docketed previous to his becoming a bankrupt, and the amount thereof respectively, and the order, in point of time, in which they were docketed ; and that the court of chancery, after deducting the costs, &c., and, also, the amount due on all the judgments standing open and unsatisfied of record, against *Comfort Sands*, and which were docketed

prior in point of time to the judgment obtained by *David* 1814.
*Gelston,* shall cause the residue, if any, to be applied to
the satisfaction of the judgment of *David Gelston,* together
with the interest."

GELSTON
v.
CODWISE.

" And further, that on the inquiry as to the judgments
against *Comfort Sands,* docketed previous to the judgment
in favour of *David Gelston,* which may be directed by the
court of chancery, the fact of the prior judgments remain-
ing open and unsatisfied of record, and satisfaction not
voluntarily confessed before the master, shall be conclusive
against *David Gelston,* as to the amount to be retained, in
preference to the satisfaction of his judgment."

The bill further stated, that certain of the judgments
standing unsatisfied on record against *Sands,* prior to the
judgment of *Gelston,* had been paid, or discharged, or ought
not be considered as *liens,* for reasons stated; that the as-
signees had sold other real estates of *Comfort Sands,* the
proceeds of which had come to their hands : and that the
assignees had obtained out of court, the proceeds of the
sales, by Mr. *Hildreth,* the master, amounting to above
28,000 dollars; but when applied to, had refused to pay
the amount due to the plaintiff on his judgment, on the pre-
tence that the decree only directed the payment to be made
out of such moneys as were *then in court, or might there-
after be brought in ;* and that they having obtained the
moneys previous to this decree, they were not bound to
apply the same to the payment of the judgment, though
they well knew that the amount was more than sufficient to
pay all the judgments unsatisfied of record prior to the plain-
tiff's judgment ; and that the plaintiff was, therefore, com-
pelled to file his bill against the defendants, in the nature of
a *supplemental* bill, to have the full benefit of the decree;
and he prayed for a discovery ; and that the principal and
interest of his judgment might be paid to him out of the
moneys received by the defendants ; and for general relief.

The defendants, in their *answer*, stated, that, in *May,* 1812, on the *remittitur* to this court, from the court of errors, the plaintiff applied for, and obtained, an order of this court, referring it to a master, to take an account of what *Codwise* and others had expended, &c., for costs, &c.; what judgments remained open and unsatisfied of record against *Comfort Sands*, docketed before his bankruptcy, and their priority in point of time. And directions were given, conformable to the decree of the court above, as to the judgments remaining open, and unsatisfied of record, unless voluntarily confessed to be paid; and directed the master to report thereon with all convenient speed; and it was thereupon decreed, that the said decree of the court above should be carried into effect in this court. And the defendants insisted, that inasmuch as this court, and the court above, did not order the moneys in the hands of the assignees, or of the master, to be brought into court, to answer the demand of the plaintiff, but restricted him for payment, to the money *then* in court, or thereafter to be brought into court, arising from the sales of the *Brooklyn* estate; and as the said decree has been procured by the plaintiff himself, he can have no equitable relief, beyond the scope of that decree, which, and the order of reference to the master, being in full force, are, they insisted, a bar to the plaintiff's demand, and the relief sought by his bill.

The defendants, also, answered the other matters charged in the bill; and the cause being put at issue, several witnesses were examined; but it is unnecessary to state the evidence here.

*Pendleton* and *S. Jones*, jun., for the plaintiff. They cited *Mitford's Pl.* 86, 87. *Cooper's Pl.* 99, 100. 4 *Johns. Rep.* 538. 10 *Johns. Rep.* 507. 520. 522.

*Harison*, and *Riggs*, contra. They cited *Mitford's Pl.* 79—82. 3 *P. Wms.* 371. *Cooper's Pl.* 88, 89. 3 *Atk.*

809.   2 *Vesey,* 571.   1 *Ch. Cas.* 43, 44.   2 *Vesey,* 232.   **1814.**
2 *Atk.* 349.   1 *P. Wms.* 723.   *Cas. temp. Talb.* 201.   GELSTON
2 *Atk.* 107.   *Forest. Rep.* 65.                                     v.
                                                                    CODWISE.

THE CHANCELLOR.   This bill is founded on the decree *Sept. 3d.*
of the court for the correction of errors, of *March,* 1812,
(10 *Johns. Rep.* 523.,) which declared, that the moneys
arising from the real estate of *Comfort Sands,* at *Brooklyn,*
and which were then in the court of chancery, or might
thereafter be brought in, after paying the costs and charges
of *Codwise* and others, ought to be applied to pay the judg-
ment creditors of *Sands,* whose judgments were docketed
prior to his bankruptcy, according to priority, in preference
to his other creditors.   The bill accordingly calls for a dis-
covery of the state of those several judgments, and the
amount due thereon; and that the defendants may pay the
plaintiff the amount of his judgment, out of the moneys
arising from the proceeds, generally, of all the real estates of
*Sands.*

But the decree went further, and prescribed, specially, the
terms of the relief afforded to the present plaintiff.   This
court was to direct an inquiry as to the costs and charges of
*Codwise* and others, and as to the judgments which were
docketed prior to the bankruptcy of *Sands,* and remained
unsatisfied of record; and that those costs, and the unsatis-
fied judgments of record, prior in point of time to that of the
plaintiff, were first to be deducted from the particular fund
so appropriated to pay the plaintiff.   The decree further di-
rected, that, upon such inquiry, the fact of prior judgments
remaining unsatisfied of record, and of which satisfaction
was not voluntarily confessed before the master, was to be
conclusive upon the plaintiff, as to the amount to be retain-
ed, in preference to his judgment.

Upon these terms, and in obedience to that decree, an in-
quiry was directed by this court; and the plaintiff, finding
that this course would not exactly meet his wishes and pur-

pose, has filed the present bill, which is not strictly a bill to carry the decree of the court above into execution, but is more like a bill of review, to correct the alleged imperfection of that decree. The bill seeks relief out of the proceeds of all the estate of *Sands*, without confining himself to the proceeds of the *Brooklyn* estate ; and it seeks for a discovery of the payment of the judgments by other means than the record, or the voluntary confession of the party ; and it seeks for payment from moneys not then in chancery, nor afterwards brought in, but which had been previously appropriated by the officers of the court. In all these respects, the bill seeks for relief *beyond* the terms of the decree, though that decree was obtained on his own motion, and on his own appeal.

The defendants, accordingly, in their answer, among other things, insist, that the plaintiff is limited to the terms of that decree, and the order made, in this court, to carry it into effect; and this they insist on as a bar to this suit, especially as that decree is in full force, and was obtained by the plaintiff's own seeking.

It struck me, at the very threshold of the argument, that the terms of that decree were the law of this court, and that no decree can be made here, or relief given to the parties in that suit, in variation from that decree. The more I have since reflected upon the case, the more I am impressed with the conviction that this is a solid principle, and one well grounded in reason and authority.

It is the acknowledged doctrine of a court of review, to give such decree as the court below ought to have given ; and when the plaintiff below brings the appeal, the court above not only reverses what is wrong, but decrees what is right, and models the relief according to its own view of the ends of justice, and the exigencies of the case. The act organizing the court for the correction of errors, declares, that " on appeals from any decree or order of the court of chancery, the court above is authorized and required, final-

ly, to determine the same, and all matters concerning it; and to reverse, affirm, or alter the decree or order, and to make such other decree, or order, therein, as equity and justice shall require." The court above acts, therefore, on appeals, in the given case, with all the plenitude of a court of equity of original jurisdiction; and the special terms of the decree, whatever they may be, become, to this court, *the law of that case*, and no other, or further relief, can be administered to the party.

Were it otherwise, there would be no such thing as a final end to litigation, and suits and decrees, on the same subject matter, would be multiplied so as to become embarrassing, inconsistent, and oppressive. It is infinitely better that decrees, in the last resort, however inconvenient or incomplete in their particular provisions in the particular case, should be acquiesced in, and finally close the controversy, than that they should be permitted to be amended, or extended by new original bills between the same parties, on the same subject matter. Such a precedent as the one now sought for, would tend to fix a character of dangerous instability and uncertainty on the administration of justice.

It may sometimes become impossible, from accidents, &c., to carry a decree into effect, without a further decree of this court; but the general rule, in such cases, is not to vary the decree, even of the same court, except in certain cases where there may have been a mistake; (*Mitf.* 87. 1 *Ves.* 245.;) and it is said, that the house of lords, upon appeal, considers the law of the decree not to be examined on a bill to carry it into execution. (*Mitf.* 86, 87. *Cooper*, 99.) So, on a bill of revivor, the plaintiff cannot controvert the decree, whatever the defendant may do. (2 *Ves.* 232.) It is well settled, that a decree can never be impeached by an original bill; it can only be questioned by a bill of review. If a decree could be altered, or varied, by an original bill, a cause, as it has been frequently observed, would never be at rest, and there would be confusion and inconsist-

ency in the decrees of the court. (*Read* v. *Hambey*, 1 *Ch. Cas*. 44. *Taylor* v. *Sharp*, 3 *P. Wms*. 371. *Wortley* v. *Birkhead*, 3 *Atk*. 809. 2 *Ves*. 571. *Shepherd* v. *Titley*, 2 *Atk*. 348.)

These are principles laid down in a series of decisions relative to decrees in the same court; but with respect to the decrees of the court of appeals, the objection applies with much greater force, since in that case, the weight of authority is added to the sanctions of policy. It was, therefore, doubted by Lord *Redesdale*, (*Mitf*. 79.,) whether even a bill of review, upon error in the decree itself, can be brought after affirmance in parliament. The case of *Barbon* v. *Scarle* (1 *Vern*. 419.) was somewhat analogous to the present attempt; but it seemed to be admitted as a settled point, that, after judgment upon appeal in the house of lords, this court could not intermeddle further than to settle so much of the cause as the lords had remanded, and that it could not reverse or alter the order of the court above.

The object of the present bill is to vary essentially the decree above, and to accommodate it to a new equity set up; for here is a different and much more extensive relief sought for, and one depending on different proof. But the decree above must be taken to be conclusive throughout, and it must be carried into effect in the mode there prescribed, and in no other; if it be not binding upon both parties, it cannot be binding upon either, and the whole decision would be set afloat. I am satisfied that this court cannot, with propriety, exercise the jurisdiction prayed for. The plaintiff must content himself with the terms of that decree, or he must come here upon equal terms with other creditors for his distributive share of the bankrupt's estate, or he must be left to pursue his remedy at law upon his judgment. He elected his own mode of application to this court, in the first instance; and he afterwards, voluntarily, sought and obtained a decree in his favour in the court above. He is, and ought to be, concluded by the equitable relief tendered to

him by the terms of that decree. He cannot be permitted to reject those terms, and come here for a new decree.

The counsel for the plaintiffs do not consider this merely as a bill of revivor or supplemental bill to carry the decree above into effect, for, in that view, it would be wholly unnecessary and useless, as nothing has happened to defeat the provision in that decree. They assert it to be an original bill, founded upon the equity contained in the decree in error. In that view, and for the reasons alleged, the bill must be dismissed, with costs.

Decree accordingly.