## JOSEPH GIBSON *vs.* JOHN H. SOPER.

An insane person or his guardian may bring an action to recover land of which a deed
was made by him while insane, which deed has not since been ratified or affirmed, with-
out first restoring the consideration to the grantee.

A decree of the probate court, dismissing a petition for the appointment of a guardian of
an alleged insane person, and the verdict of a jury and judgment of this court, on
appeal from such decree, in favor of his sanity, are not conclusive evidence of his san-
ity at a time intermediate between such decree and verdict, in an action subsequently
brought in his behalf to recover land of which he made a deed between those dates;
and if admitted in evidence as a fact tending to prove his sanity, the defendant has no
ground of exception.

WRIT OF ENTRY. Trial in this court before *Dewey*, J., who,
after a verdict for the demandant, made a report of the case to
the full court, the substance of which appears in their opinion.

THOMAS, J. This is a writ of entry, brought for the demand-
ant by his probate guardian, to recover a farm situated in Great
Barrington in this county. The tenant pleads the general issue,
and claims title under a deed of the demandant, dated July 25th
1853, but delivered some time in November of that year. The
demandant replies, that at the time of the making and of the
delivery of the alleged deed he, the grantor, was an insane
person.

The tenant says, that at the time of the execution of the
deed, and as the consideration therefor, the tenant executed and
delivered to the demandant a contract in writing, by which,
among other things, he stipulated to pay the debts of said Gib
son, consisting in part of incumbrances upon said real estate,
to support said Gibson and his wife, to pay said Gibson an
annuity for his life, and to pay certain sums of money to the
children of Gibson. He then offered to prove that he had made
payments towards said incumbrances, and upon the other debts
of the demandant; that he had tendered to Henry Gibson, one
of the children of the demandant, the sum stipulated to be paid
him, and at the time fixed in the contract, though it had not
been received by said Henry; that he had paid to the demandant
the sums agreed to be paid, and had supported the demandant

and his wife, as the contract provided; and that he had paid interest upon the mortgages on the estate since the action was commenced; but he did not claim that such payment was by the authority or with the consent or knowledge of the guardian.

He contended that upon proof of the payments made, and of the performance of the contract on his part, the demandant could not maintain this action, without having offered, before its commencement, to make restitution; to repay to him the amounts so paid; to compensate him for his services rendered in this behalf; to surrender to him the contract, and to indemnify him against it; and that, no offer of restitution having been made, this action could not be maintained.

The demandant then offered in writing to make such restitution and repayment, if any thing was due, (which he denied,) in such way and manner as the court should direct. But he contended that no offer of restitution was necessary before the commencement of the action, and that the evidence offered by the tenant was inadmissible.

The tenant had been in the possession of the premises and in the receipt of the rents and profits since the deed.

The presiding judge ruled, in substance, that such offer of restitution was not necessary before the commencement of the action.

This ruling was, we think, clearly right. The tenant produces and relies upon his deed. The demandant says, that deed is voidable in law, that is, it may be avoided unless it has been ratified or affirmed. It has not been ratified or affirmed.

The bringing of this action is an election to avoid it. Having shown that he was insane when the deed was made, and that the deed was therefore voidable, and having, by his guardian, elected to avoid it, but one question can arise, namely, Has the plaintiff, upon restoration to sound mind, or have his legal representatives ratified or affirmed the deed, that is, given it a validity, which, before and without such ratification or affirmance, it did not possess; which it could acquire only by ratification?

How far the probate guardian of an insane person could ratify a deed made by his ward, or what acts of the guardian

would be evidence of such ratification, it is not necessary to consider; there being no evidence tending to show a ratification, either by the guardian or the ward. The only question presented in this part of the case is, whether, when a deed has been executed by an insane person, it is necessary for him to make restitution of the consideration before he or his guardian or heirs can bring a suit to avoid it.

The position taken by the tenant is, that the grantor or his guardian or heirs cannot avoid the grant, unless he or they place the grantee, in all respects, in the condition in which he was before the deed. It seems to us, upon careful consideration, that such is not the rule of law; that the restitution of the consideration of the deed or purchase money is not a condition precedent to the recovery of the land.

Upon strict principles of law, this is clear. The estate is shown to have been in the demandant within the twenty years. The tenant says he holds by a deed from the demandant. But the demandant is shown to have been incapable of making a valid deed. It wants the consenting mind. The tenant must then show ratification, ratification by some act of the grantor upon his restoration to sound mind, or, possibly, by his guardian But the grantor has remained insane ever since the deed; as incapable of confirming, as of making it. The guardian has done nothing to ratify or confirm the grant. The estate is still in the demandant; for if it has passed, it has passed by the deed of an insane man, never ratified or confirmed. That, in law, was impossible. The courts have certainly gone far enough in saying such an instrument was capable of being ratified or affirmed by acts *in pais*. They have never said that, though the grantor was incapable of making a deed, it should be valid against him, however insane, unless he ascertained what was the consideration paid to him, had the means of restoration, and offered to restore; and all this as a condition precedent to the recovery of that which he never had conveyed.

No considerations of policy or equity require the adoption of such a rule. To say that an insane man, before he can avoid a voidable deed, must put the grantee *in statu quo*, would be to

24 *

say, in effect, that, in a large majority of cases, his deed shall not be avoided at all. The more insane the grantor was when the deed was made, the less likely will he be to retain the fruits of his bargain, so as to be able to make restitution. If he was so far demented as not to know or recollect what the bargain was, the difficulty will be still greater.

One of the obvious grounds, on which the deed of an insane man or an infant is held voidable, is not merely the incapacity to make a valid sale, but the incapacity prudently to manage and dispose of the proceeds of the sale. And the same incapacity, which made the deed void, may have wasted the price, and rendered the restoration of the consideration impossible. For example: One buys of an insane man his farm; he gives a note, good only because it has a good indorser; the insane grantor omits to have the indorser notified, and loses its value. Must he, before he can recover the estate, put the grantee *in statu quo ?*

Upon the first impression, it may seem equitable that such restoration should be made, before the insane or infant grantor should recover his estate; but it is an impression which a little reflection removes. The law makes this very incapacity of parties their shield. In their weakness they find protection. It will not suffer those of mature age and sound mind to profit by that weakness. It binds the strong, while it protects the weak. It holds the adult to the bargain which the infant may avoid; the sane to the obligation from which the insane may be loosed. It does not mean to put them on an equality. On the other hand, it intends that he who deals with infant or insane persons shall do it at his peril. Nor is there, practically, any hardship in this; for men of sound minds seldom unwittingly enter into contracts with infants or insane persons.

If the law required restitution of the price, as a condition precedent to the recovery of the estate, that would be done indirectly which the law does not permit to be done directly; and the great purpose of the law, in avoiding such contracts, the protection of those who cannot protect themselves, defeated. The insane grantor could not avoid the deed of his estate, be-

cause the same folly, which induced the sale, had wasted the proceeds; the result against which it is the policy of the law to guard.

Whether the grantee, whose deed is avoided on this ground, may recover back the price, and under what circumstances and to what extent, presents a quite different question, into which it is not necessary to enter. The only question before us is, whether its restoration is a condition precedent to the recovery of the estate in a writ of entry, upon proof that the grantor was insane when the deed was made, and in the absence of all evidence of ratification.

Doubtless, if the grantor, having been restored to sound mind, or the infant, upon coming of age, still retains and uses the consideration of the deed, without offer to restore; or seeks to enforce the securities, or avail himself of the contract which constituted such consideration; such conduct may furnish satisfactory, and, it may be, conclusive evidence of a ratification. And this is the extent, we think, to which the cases have gone, upon which the tenant especially relies, of *Allis* v. *Billings*, 6 Met. 415, and *Arnold* v. *Richmond Iron Works*, 1 Gray, 434.

The first of these cases settled that a deed of land by an insane person is voidable only, and not void, and may therefore be ratified by him when he is of sound mind. The instruction to the jury was, that such a deed was absolutely void; this the court overruled, holding that the deed might be ratified by the party when he was of sane mind. " Upon the point first relied upon," say the court, " namely, that the demandant was insane when he executed the deed, the jury should have been instructed that this fact, if established, rendered the deed voidable, and that it was competent for the defendant to avoid it on that ground, if not estopped by his subsequent acts, done while in his right mind; but that a voidable deed was capable of confirmation, and that if the grantor, in his lucid intervals, or after a general restoration to sanity, then being of sound mind, and well knowing and understanding the nature of the contract, ratified it, adopted it as a valid contract, and participated in the benefits of it, by receiving from the purchaser the purchase

money due on the contract, this would give effect to the deed, and render the same valid in the hands of the grantee, and would thus become effectual to pass the lands, and divest the title of the grantor." 6 Met. 421.

This extract states the law as settled in this commonwealth; that the deed is voidable; that it becomes a binding contract upon the grantor only when, being of sound mind, and understanding the nature of the contract, he adopts and ratifies it; and that the availing himself of the contract, by receiving the purchase money due upon it, after his restoration to sanity and with an understanding of the contract, is a ratification and adoption.

The case of *Arnold* v. *Richmond Iron Works*, 1 Gray, 434, goes no further. The report of the referees found that the plaintiff was restored to his right mind, and after his restoration, knowing the nature and effect of the conveyance, and that the notes were part of the purchase money for the premises conveyed, received several payments upon them. By so doing, it was held, he affirmed the deed. The decision is put directly upon the authority of *Allis* v. *Billings*, as " so like in all its essential features, that it seems hardly necessary to do more than cite that case." 1 Gray, 437.

The tenant relies upon some remarks of the chief justice in delivering the opinion of the court, as sustaining his position. Nothing is more unsafe than to rely upon such remarks, taken from the connection and context by which their meaning is limited and qualified. In their relation and application to the facts under discussion, they may be sound and pertinent; wrested from their connection and application, and applied to a different state of facts, they may be neither just nor sound.

In the case of *Arnold* v. *Richmond Iron Works*, the plaintiff had been restored to his sound mind. Being so restored, and understanding fully the contract he had made, he chose to avail himself of its benefits. The chief justice remarks: " If then the unfortunate person of unsound mind, coming to the full possession of his mental faculties, desires to relieve himself from a conveyance made during his incapacity, he must restore the

price, if paid, or surrender the contract for it, if unpaid. In short, he must place the grantee, in all respects, as far as possible, *in statu quo*." 1 Gray, 437. As applied to the case of a grantor having in his possession the notes which were the consideratio of the deed, and restored to the full possession of his mind these remarks are just. The retention of the notes, still mor the receiving payments upon them, is evidence of ratification is an election to abide by the contract.

But they have no just application to a case where the grantor has not been restored to sanity, and where no act has been done to affirm the deed, and the grantor has never been in a condition capable of affirming it. Nor do they, considered in their relation to the facts of the case, affirm the doctrine, that, even upon restoration to sanity, restitution of the price is a condition precedent to the avoidance of the deed and recovery of the estate. If the grantor still has the notes, contract, or deed of land, and elects to retain them, it may be, he affirms his grant. This is the extent to which the doctrine can be carried. If the remarks are susceptible of the broader construction contended for by the tenant, they do not, upon consideration, command our assent.

One other question remains upon the report. On the 5th of March 1853 a petition was filed in the court of probate for the appointment of a guardian over the demandant. The judge of probate declined. An appeal was entered in this court, and the cause continued to May term 1854, when an issue upon the sanity of the demandant was made to the jury. The jury found by their verdict that the demandant was not insane when the petition was filed, nor when the verdict was rendered. Upon this verdict judgment was rendered for the respondent. The tenant claimed that such verdict and judgment were conclusive evidence of the mental condition of Gibson at the time of making the contract, or at the time of making the petition and the time of rendering the verdict; or were, at least, presumptive evidence.

· Of course, they were not conclusive; as a man may be sane in April 1853 and in May 1854, and yet insane in July and

November 1853. To say, that the judgment is presumptive evidence, even if applied to the time of the contract, is to give it no special force; for the presumption of sanity is made by the law itself.

The tenant further claimed, that if it was not proof of sanity at the time of making the deed, it was of sanity at a time subsequent, and so might be important upon a question of ratification.

The presiding judge ruled "that the said proceedings and record were not conclusive evidence of the sanity of the party at the time therein stated; that they were admissible and competent to show the fact, that the party was not put under guardianship at that time, and was not found by the courts in which the trials were had, upon the evidence then offered, to be an insane person; that, as to presumption of sanity, that was to be presumed till the contrary was shown; that, as to the case before them, the jury must judge upon all the evidence, as a part of which they might take the fact, that in the proceedings in the court of probate he was found by the jury to be sane."

These instructions, we think, were certainly sufficiently favorable to the tenant. He has no right to complain. Speaking for myself, it is difficult to see how, in the trial of this cause, any effect could be given to the decision of the judge of probate, or the verdict of the jury in the supreme court of probate; for this jury could not properly know upon what evidence, or absence of evidence, such decision or verdict was based; and if not, what weight or degree of force they could give to the fact.

It is said by the tenant, that if the jury had found the grantor was insane, their verdict would be conclusive. But this is not so, unless it had been followed by the appointment of a guardian. And then the party becomes incapable of contracting, not merely from the state of his mind, but because the power of present control over his property is taken from him; which is also the case with the spendthrift under guardianship, who may yet be of wholly sound mind. But a person under guardian-

ship for insanity may make a will, if it can be shown he was of sound mind when the will was made.

*Judgment on the verdict.*

*I. Sumner & R. A. Chapman,* for the demandant, to the point that a previous restoring of the consideration was not necessary to the maintenance of this action, cited *Beverley's case,* 4 Co. 123 *b*; Co. Lit. 247; *Allis v. Billings,* 6 Met. 418; *Lang v. Whidden,* 2 N. H. 435; *Dearborn v. Eastman,* 4 N. H. 441; *Tucker v. Moreland,* 10 Pet. 58; *Bryan v. Walker,* 4 Barr, 371; *Shaw v. Boyd,* 5 S. & R. 309; *Curtin v. Patton,* 11 S. & R. 305; *Philips v. Green,* 3 A. K. Marsh. 7; *Benham v. Bishop,* 9 Conn. 330; *Wilcox v. Roath,* 12 Conn. 550; *Goodsell v. Myers,* 3 Wend. 479; Com. Dig. Enfant, C. 3, 4, 5; *Whitney v. Dutch,* 14 Mass. 457; *Smith v. Mayo,* 9 Mass. 62; *Ford v. Phillips,* 1 Pick. 202 *Thompson v. Lay,* 4 Pick. 48; *Walker v. Davis,* 1 Gray, 506 *Seaver v. Phelps,* 11 Pick. 304; *Mitchell v. Kingman,* 5 Pick. 431; *Worcester v. Eaton,* 13 Mass. 371; *Thompson v. Leach,* 3 Mod. 310; to the point that the decree, verdict and judgment on the petition for the appointment of a guardian were not competent evidence, 2 Steph. N. P. 1664; *Blackham's case,* 1 Salk. 290; *Maybee v. Avery,* 18 Johns. 352; and to the point that, if admissible, they were not conclusive, but the ruling of the court was sufficiently favorable to the tenant, *Sergeson v. Sealey,* 2 Atk. 412; *Faulder v. Silk,* 3 Campb. 126; *Hart v. Deamer,* 6 Wend. 497; *Osterhout v. Shoemaker,* 3 Hill, 513; *Van Cleef v. Fleet,* 15 Johns. 147; *White v. Palmer,* 4 Mass. 147; *Stone v Damon,* 12 Mass. 488; *Breed v. Pratt,* 18 Pick. 115; 2 Greenl. Ev. § 371; 1 Stark. Ev. (4th Amer. ed.) 258.

*J. D. Colt & C. N. Emerson,* for the tenant, to the point, that this action could not be maintained for want of a previous offer to restore the consideration paid, and surrender the defendant's agreements, cited *Allis v. Billings,* 6 Met. 415; *Arnold v. Richmond Iron Works,* 1 Gray, 437, 440; *Badger v. Phinney,* 15 Mass. 359; *Wait v. Maxwell,* 5 Pick. 217; *Kendall v. Lawrence,* 22 Pick. 543; *McCrillis v. Bartlett,* 8 N. H. 569; *Ballard v. McKenna,* 4 Rich. Eq. 358; *Price v. Barrington,* 3 Macn. & Gord. 486; *Molton v. Camrous,* 2 Exch. 487, and 4 Exch. 17; *Baxter*

v. *Portsmouth*, 5 B. & C. 170, and 2 Car. & P. 178; *Dane* v. *Kirkwall*, 8 Car. & P. 679; *Niell* v. *Morley*, 9 Ves. 478; *Ex parte Ferne*, 5 Ves. 832; Shelford on Lunatics, 255; Highmore on Lunacy, 122, 123; *Norton* v. *Norton*, 5 Cush. 530; *Manson* v. *Felton*, 13 Pick. 212; to the point that the judgment of this court upon the issue tried by a jury, of the sanity of the grantor, was conclusive, as a judgment *in rem*, *Leonard* v. *Leonard*, 14 Pick. 280; *Baxter* v. *New England Marine Ins. Co.* 6 Mass. 286; *Arnold* v. *Arnold*, 17 Pick. 9; *Greene* v. *Greene*, 2 Gray, 364; *Cook* v. *Allen*, 2 Mass. 462; *Homer* v. *Fish*, 1 Pick. 435; *Marsh* v. *Pier*, 4 Rawle, 288; *Hibshman* v. *Dulleban*, 4 Watts, 644; *Peck* v. *Woodbridge*, 3 Day, 30; *Whittemore* v. *Shaw*, 8 N. H. 393; *Woodruff* v. *Taylor*, 20 Verm. 65; *Gelston* v. *Codwise*, 1 Johns. Ch. 195; *Wyman* v. *Campbell*, 6 Porter, 219; *Outram* v. *Morewood*, 3 East, 346; *Phillips* v. *Hunter*, 2 H. Bl. 415; Story Confl. §§ 591, 592; and to the point that, if the judgment was not conclusive, it should at least have been submitted to the jury, as competent evidence tending to establish the sanity of Gibson at the time specified in the verdict, and having an important bearing upon the question of ratification, *Butler* v. *Hildreth*, 5 Met. 49; *Norton* v. *Norton*, 5 Cush. 530; *Allis* v. *Billings*, 6 Met. 415; *Arnold* v. *Richmond Iron Works*, 1 Gray, 434.