In the Matter of the Estate of THOMAS F. BALFE, Deceased.
In the Matter of the Estate of MARY A. BALFE, Deceased.

Surrogate's Court, Orange County, May 29, 1940.

*L. & A. U. Zinke* [*Alexander U. Zinke* and *Charles W. Silver* of counsel], for the petitioner.

*Milbank, Tweed & Hope* [*Russell Wiggins* and *Mizell Wilson* of counsel] for the Title Guarantee & Trust Company, as trustee.

TAYLOR, S. After a more or less protracted trial involving objections to the trustee's accounts in these two estates, the surrogate declined to surcharge the trustee and settled and allowed the accounts as filed (152 Misc. 739).

The parties, including the special guardian, feeling aggrieved appealed to the Appellate Division, and that court affirmed the surrogate's decrees, save for a modification to the extent of eliminating the allowance for counsel fees (245 App. Div. 22).

The interests of the adult and the infant parties were in no respect diverse, and the special guardian throughout the trial in addition to taking part therein actively co-operated with counsel for the adult objectors.

It seems that after the decision of the Appellate Division an alleged compromise was made by which the adult objectors received certain sums of money, the trustee purchased from one of them certain of its own guaranteed mortgage certificates, waived its commissions and put certain sums into the principals of the Mary Balfe and Thomas Balfe residuary trusts, the waiver of commissions and the payment of sums into the principals of the trusts being for the interests of the infant beneficiaries. This compromise agreement was never submitted to this or any other court for approval.

One of the infant beneficiaries has since become of age and has disavowed and repudiated the alleged agreement of settlement, and now applies to this court for an order vacating its decrees and granting as to this beneficiary a trial of the issues *de novo*.

Application for relief was made to the Appellate Division and that application denied.

The petitioner asserts that a special guardian is wholly without power to compromise in behalf of his ward without application to the court for approval of such compromise. The trustee contends that no judicial approval of such compromise is required.

The briefs of counsel indicate painstaking research and nowhere in the petitioner's brief is there cited any authority, statutory or otherwise, for the arguments put forth. The only case advanced by the petitioner is *Honadle* v. *Stafford* (265 N. Y. 354). While one may quote excerpts from opinions as laying down general principles, or establishing rules of law, it is nevertheless axiomatic that, generally speaking, portions of opinions are to be interpreted in the light of the question presented, and the actual decision reached. (*Matter of Reilly*, 165 Misc. 214; *Dougherty* v. *Equitable Life Assurance Soc.*, 266 N. Y. 71; *Matter of Suderov*, 156 Misc. 661; affd., 249 App. Div. 763; affd., 274 N. Y. 525.)

Examining the *Honadle* case and the authority therein cited (*Greenburg* v. *New York Central & H. R. R. R. Co.*, 210 N. Y. 505), with this admonition in mind, the rule laid down went no further than to hold that one is not protected in paying moneys adjudged to belong to an infant to the guardian *ad litem* until he has furnished the security required by statute, or in paying such moneys to an attorney when the order expressly provides for its payment to the guardian *ad litem*.

While *Edsall* v. *Vandemark* (39 Barb. 589) and, undoubtedly, similar cases do state that a guardian *ad litem* does not have

authority to settle a negligence action without judicial authority so to do, it must be also kept in mind that, so far as the surrogate has observed, such guardians are limited by express language of their orders of appointment to the prosecution or defense of the action in behalf of their wards. Orders in Surrogates' Courts appointing special guardians contain no such limitations.

The surrogate has expended some little effort in an examination of this question and has failed to find any satisfactory authority. It may be mentioned in passing that it will be found in many, if not all, of the cases examined that the payment of infants' moneys was directed to be paid to the guardian *ad litem* who is generally prohibited from receiving money or property other than costs and expenses allowed to him until he was given sufficient security, approved by a judge of the court or a county judge. (Rules Civ. Prac. rule 41.) In this case it is to be observed that the special guardian received no portion of the infant's funds.

There is authority (*Matter of Field,* 115 Misc. 733) for the contention that a special guardian may not compromise a will contest without the court's approval, but here again is the distinction that such situations are controlled by statute (Dec. Est. Law, § 19). In death actions, where limited letters are issued, the special guardian is limited to the prosecution of the action. (Surr. Ct. Act, § 122.) Section 213 of the Surrogate's Court Act may be dismissed with the statement that its provisions are permissive only. (*Matter of Corbin,* 227 App. Div. 87.)

The surrogate finds it unnecessary to determine four square that court approval of compromise of infants' claims is necessary for reasons hereinafter assigned, but it may be noticed in passing that section 64 of the Surrogate's Court Act, which is authority for the appointment of special guardians, provides that the surrogate must appoint a competent and responsible person " to *appear* as special guardian." It may be said that a special guardian is in a sense the attorney for his ward (*Matter of Mackenzie,* 155 Misc. 822), with the supplemental statement that under many circumstances he ought not to go so far as an attorney may go in the making of admissions, for example. If this analogy is sound, then it would follow that judicial approval of a compromise is required, for an attorney is without authority to compromise his client's cause of action. (*Appleton* v. *Greenfield,* 244 App. Div. 732; *Countryman* v. *Breen,* 241 id. 392; affd., 268 N. Y. 643; *Bush* v. *O'Brien,* 164 id. 205.)

It is argued that vacatur of the decree in this court would place the petitioner in *status quo ante* compromise agreement, but this is unsound for the reason that the status of the case at the time

of the compromise agreement was a decision by this court, adverse to the petitioner and its affirmance by the Appellate Division, leaving to the petitioner only the right to apply to the Appellate Division for a reargument, or to appeal to the Court of Appeals, or both. A trial *de novo* in this court is not a substitute for or the alternative of an appeal to the Court of Appeals.

Assuming that the so-called compromise agreement should have been submitted to this or some other court for approval, which was not done, the most the petitioner could ask would be to be put back into the position in which he was immediately prior to the making of the agreement (that is, be revested with the right to apply to the Appellate Division for reargument, or to appeal to the Court of Appeals, or both), and obviously this court is wholly without authority to place him in that position.

No complaint is made of the trial in this court, for the petitioner has offered to stipulate that if a trial *de novo* were granted, all the testimony heretofore taken may be read into the new trial, although the suggestion is made that some additional evidence might be offered. After affirmance of this court's decree by the Appellate Division, it would be tantamount to the surrogate reversing that high tribunal were a new trial to be granted under these circumstances. It is submitted that no one would contend for such authority in this court.

Even the comparatively unimportant question of costs cannot be redetermined by the trial court after an affirmance of its judgment by the appellate court, and in the case of *Sheldon* v. *Williams* (52 Barb. 183), involving such question, it was said: " There is no power conferred upon the Special Term to review, alter, modify or change this judgment of the General Term. It would be a subversion of the very order, nature and effect of the judicial authority if this were so. The appellate court might, by such a practice, become a useless institution; its judgments would have no permanence and its authority be of no security to parties. We are looking at this case as it appears before us upon the papers, which may not be a fair presentation of the case; but as it appears, the General Term had, on a careful and deliberate review of the case upon its merits, pronounced its judgment thereon, and made its award of costs. Under such a judgment, the rights of the parties become fixed as to all the questions passed upon by the court, subject only to review by the Court of Appeals; otherwise it was final and conclusive. Whatever power a Special Term may have to control judgments in matters of practice, not affecting substantial rights, such as to allow their entry ' *nunc pro tunc*,' &c. they clearly cannot exercise the power of review, or modification upon the merits, of a General Term decision " (pp. 186, 187).

*Matter of Westerfield* (61 App. Div. 413) involved the opening of a decree by the surrogate after its affirmance by the Appellate Division, and the latter court in this department very pertinently said: " The first involves the power of the surrogate to make the order opening the decree and permitting further testimony to be taken after such order has been denied by this court. It is certainly a novel proposition, to say the least, that a final decree of an appellate tribunal can be vacated and set aside by the court from which the appeal is taken. That this decree is a final decree is settled by the Court of Appeals. * * * The effect, therefore, of the surrogate's order was to vacate a decree made by this court. And not only that, but the petitioners themselves, in recognition of the power of this court in the premises, at first made the application to this court to open the decree; and, as we have seen, that motion was denied. The surrogate's order, therefore, not only opened this decree but overruled the decision of this court made upon the same subject. There was no warrant in law for any such proceeding " (pp. 418, 419).

To borrow the wording from *Hood* v. *Hood* (5 Dem. 50, 51) it may be said, " the decree complained of was affirmed by the Supreme Court, and now it has become, by affirmance, in effect, the solemn judgment of our highest tribunal."

That the surrogate or the Special or Trial Term is without authority to vacate or modify, or even correct, its decree or order after affirmance by the Appellate Division was also pointed out in *Title Guarantee & Trust Co.* v. *Winklers Catering Corp.* (256 App. Div. 960); *Matter of Crandall* (218 id. 190; appeal dismissed, 245 N. Y. 570); *Kirkpatrick Home for Childless Women* v. *Kenyon* (209 App. Div. 179); *Redfield* v. *Critchley* (171 Misc. 62); *Matter of Peterson* (68 id. 10); *Reed* v. *Reed* (52 N. Y. 651); *Sheridan* v. *Andrews* (80 id. 648); *Marshall* v. *Boyer* (52 Hun, 181); *Lyon* v. *Merritt & Dyckman* (6 Paige Ch. 473).

The reason is obvious, for " were it otherwise, there would be no such thing as a final end to litigation, and suits and decrees, on the same subject matter, would be multiplied so as to become embarrassing, inconsistent and oppressive. It is infinitely better that decrees, in the last resort, however inconvenient or incomplete in their particular provisions in the particular case, should be acquiesced in, and finally close the controversy, than that they should be permitted to be amended, or extended by new original bills between the same parties, on the same subject matter. Such a precedent as the one now sought for, would tend to fix a character of dangerous instability and uncertainty on the administration of justice." (*Gelston* v. *Codwise*, 1 Johns. Ch. 189, 194.)

A few of the other arguments advanced by the petitioner will be noticed. It is contended that under one of the wills the trust remainder might go to persons yet unborn whose rights are not affected by the decree for no special guardian was appointed for them. The answer to this is that these persons are not questioning this settlement, and their rights, if any, will be determined only when a factual situation calling for such determination is presented.

It is contended, too, that a special guardian ought to apply to the surrogate for instructions as to whether or not he should appeal, but as said by the Appellate Division in *Matter of Lancashire* (161 App. Div. 946), " This court will not undertake to advise the special guardian as to the performance of his duties in matters of procedure."

The motion is denied.

Settle order on five days' notice or by consent.