(June 11, 1987)

■ SIMON HABERMAN, Doing Business as STUYVESANT APARTMENTS Co., Appellant-Respondent, v KARIN WASSBERG, Respondent-Appellant.—Judgment, Supreme Court, New York County (Harold J. Hughes, Jr., J.), entered on or about April 25, 1986, which, upon a jury verdict at an inquest for the assessment of damages only, awarding respondent $337,784.32 upon her counterclaims, is reversed and vacated, on the law and the facts, without costs to either party, with leave to enter a new judgment against petitioner in the sum of $1,500 upon her fourth counterclaim with interest from the date of the judgment, but without costs *(see,* CPLR 8201 [1]). Respondent's cross appeal seeking a new trial on her fourth counterclaim is dismissed.

This inquest on respondent's counterclaims followed petitioner's inexcusable (and therefore unexcused) default in serving a reply. Following his default in pleading, petitioner made at least four applications to vacate the default order. All of them were denied in separate Trial Term orders, and one of these (David H. Edwards, Jr., J.), entered on February 15, 1985, was appealed to this court and affirmed by us in our order dated June 6, 1985 [111 AD2d 1082]. In our disposition of the present appeal we in no way disturb these prior determinations. Our concern now is wholly focused upon the unacceptable outcome of the inquest.

Respondent's third counterclaim, upon which she had her most substantial recovery, arose out of her execution and delivery, together with the stipulated down payment, to petitioner owner, of a contract to purchase apartment 11A, at 257 Central Park West, New York, New York, in her capacity as purported lessee thereof. When petitioner failed to perform the contract, after the building became a cooperative, respondent sought damages representing the difference between the "insider" purchase price available to bona fide lessees and the true market value. The jury verdict fixed these loss of bargain

damages in the sum of $210,180 for which respondent had judgment, together with $108,978.33 interest.

We have had occasion to consider respondent's status with respect to this same apartment 11A on a prior occasion. In *Ian v Wassberg* (79 AD2d 919, *republished* 80 AD2d 505, *affd* 55 NY2d 706), a declaratory judgment action to which these litigants were both parties defendant, we held that plaintiff Ian had a superior right to possession of apartment 11A to respondent here as the lessee prior in time. On that appeal we held *(supra)*, that "The lease entered into by the landlord with defendant Wassberg [respondent herein] was bottomed upon the assumption that she was the designee of the Swedish Consulate General, which theretofore had leased the apartment. Such, however, was not the case." On the record before us then and now it is apparent that respondent obtained her "lease" from petitioner by means of fraudulent representations that she was the official designee to occupy the apartment of the Swedish Consulate General. Suffice to say, the procuring cause of respondent's lease to apartment 11A was her own fraud.

Our prior holding in *Ian v Wassberg (supra)* properly persuaded the inquest court, when apprised of it, to withhold from the jury any consideration of respondent's second counterclaim for damages for breach of lease based upon a five-month period of time during the two-year term of her lease that she was ousted from possession. In ruling that as a matter of law respondent had suffered no damage by interference with the very same right that we had determined she never had, the inquest court gave appropriate recognition to our decision holding that respondent's lease was a legal nullity. However, in submitting the third counterclaim to the jury, the inquest court overlooked the fact that respondent's contract to purchase apartment 11A at the favorable insider price was simply an appurtenance to the lease, and that if respondent was not a tenant in possession of apartment 11A pursuant to a valid lease, she also lacked any standing to enforce the purchase contract. In *De Kovessey v Coronet Props. Co.* (69 NY2d 448, 457), the Court of Appeals recently observed that "the critical component to establishing an entitlement to exercising the insider rights of a 'tenant in occupancy' is a landlord-tenant relationship * * * *at the time the plan is accepted for filing."* (Emphasis added.) No such relationship was ever brought into being here.

We are, of course, mindful of the general rule that at an inquest following a default, the defending party's liability is

not normally an issue, and that the scope of the pertinent inquiry is the admeasurement of the prevailing party's damages *(McClelland v Climax Hosiery Mills,* 252 NY 347, 351; *Rokina Opt. Co. v Camera King,* 63 NY2d 728). Thus, "at a trial to determine the amount of a plaintiff's real damages, the defendant will not be allowed to introduce *evidence* tending to defeat the plaintiff's cause of action." *(Rokina Opt. Co. v Camera King, supra,* at 730 [emphasis added].) Our disposition herein presents no departure from this salutary rule. Respondent's third counterclaim is not foreclosed by any allegations or proof emanating from petitioner which might denigrate liability, as opposed to damages. On the contrary, the bar to respondent's recovery on the third counterclaim rests upon the prior holding of this court, as affirmed by the Court of Appeals, which constituted *the law of the case* before the inquest, and indeed the default in replying to the pleading amended after *Ian v Wassberg (supra)* ever took place. Respondent's judgment on her third counterclaim, if permitted to stand, would represent an impermissible reversal of the prior determination of this court in *Ian v Wassberg* which the inquest court was without power to effect *(Sheridan v Andrews,* 80 NY 648; *Matter of Balfe,* 174 Misc 279, 283, *affd* 261 App Div 996). "Were it otherwise, there would be no such thing as a final end to litigation, and suits and decrees, on the same subject matter, would be multiplied so as to become embarrassing, inconsistent and oppressive." *(Gelston v Codwise,* 1 Johns Ch 189, 195.)

We now turn our attention to respondent's fourth counterclaim in the sum of $13,890.50 for legal fees. Since the lease contained a standard provision for the recovery of legal fees if petitioner landlord were to prevail in litigation against respondent tenant, the latter would be positioned to invoke the reciprocal right of recovery imported into the lease under the provisions of Real Property Law § 234.

The briefs of both parties are in agreement that the portion of the judgment pertaining to legal fees consists of two components: an award (1) in the sum of $3,528 in connection with a successful forcible entry and detainer action brought by respondent herself against Ian, the prior lessee whose self-help in evicting her from apartment 11A was rebuffed, but who ultimately prevailed against her in *Ian v Wassberg (supra),* and (2) in the sum of $10,362.50 for the legal fees incurred by her in the instant action.

The award of the jury of the damages for item (1), even in the context of an inquest, cannot be affirmed because the

claim was never adequately articulated in the amended answer, and therefore there was no default by petitioner with respect to it. The only pertinent allegations with respect to counsel fees in the fourth counterclaim are limited to (a) breach and nonperformance of the lease, (b) legal services rendered in *Ian v Wassberg (supra),* and (c) respondent's "successful defense" of landlord's claim against her for rent asserted in this action. Even if claim (a) of the fourth counterclaim can be read as encompassing the services in the forcible entry action, that was primarily generated by Ian's extralegal eviction of respondent, where petitioner landlord's role was that of a passive codefendant. Furthermore, this claim was inextricably linked to respondent's second counterclaim which, as we have noted, was properly rejected by the inquest court itself.

Counsel fees on item (c) were awarded upon testimony that respondent's lawyers spent 82.9 hours at a rate of $125 per hour for services rendered in the action at bar which began in Civil Court with petitioner's nonpayment petition for recovery of rent in the sum of $8,450, later consolidated with a pending action in Supreme Court. It is apparent that the overwhelming bulk of the legal services rendered herein were not in defense of this phantom liability, but rather in respondent's unsuccessful prosecution of her legally deficient counterclaims. As such, this aspect of the jury's award provides the anomaly of a tail wagging an elephant, and finds insufficient support in the record as a matter of law. To be sure, respondent was entitled to defend petitioner's rent claim pursued under the void lease, and to the *pro tanto* benefit of the reciprocal counsel fee statute. Having prevailed to the extent of defeating the rent claim, she has a right to her legal expense incurred in the elimination of only that exposure. Our review of the record reveals, however, that only a modest fraction of respondent's legal services can be rationally connected with maintaining her defense to the original nonpayment proceeding. We are satisfied that no more than $1,500 can be justified in the mounting of that defense, and therefore limit respondent's recovery to such amount on this aspect of the case. Concur—Murphy, P. J., Sandler, Carro, Asch and Wallach, JJ.