OPINION OF THE COURT
Yvonne Lewis, J.
These proceedings were commenced by orders to show cause returnable July 1, 1986. On August 27, 1987, respondents signed consent orders which provided for correction of all pending violations as listed in annexed databases. In September 1988 the petitioner sought to punish the respondents for contempt of court. Upon inquest, this court found beyond a reasonable doubt that respondents had willfully failed to obey the August 27, 1987 order of the court. Being unsuccessful after several attempts to vacate the June 1989 orders, respondents appealed to the Appellate Term for the Second and Eleventh Judicial Districts. The Appellate Term affirmed this court’s determinations on May 16, 1990.[1] Leave to appeal to the Appellate Division, Second Department was denied by the Appellate Term on June 27, 1990. Leave to appeal to the Appellate Division, Second Department and reargument for leave to appeal were denied by the Appellate Division on August 13, 1990 and December 31, 1990, respectively. In April 1991 respondents brought on the instant motion seeking to purge the contempt or alternatively to have the jail sentence modified. The case was set down for hearing and was heard on July 23, 30, August 21, 28 and November 20, 1991. On the petitioner’s continual objection to the hearing and the evidence heard the court suspended the fact finding in favor of addressing the questions of law.
LEGAL CONCLUSIONS
Counsel for the parties have framed the issue herein to be whether respondent may move to purge a finding of criminal contempt where the evidentiary standard was beyond a reasonable doubt and the trial court’s determination has been affirmed by the Appellate Term. Petitioner argues that the trial court has no ability to purge criminal contempt and that it cannot entertain respondents’ motion since the appellate *317 court has affirmed, its earlier determination. Respondents contend that the trial court may, under the law and the law of the case, both entertain the motion and allow respondents to prove that his actions have been sufficient to purge the criminal contempt. In the alternative, respondents argue that if this court may not change its finding of criminal contempt it can, nonetheless, change the sentence of incarceration.

Can Criminal Contempt Be Purged?

Notwithstanding their several attempts to vacate this court’s finding and sentence, respondents do not now challenge the June 23, 1989 orders, herein.[2] Respondents seek to be relieved of the adjudication of criminal contempt.[3] Both petitioner and respondents take support for their position from People v Leone (44 NY2d 315 [1978]). The petitioner would have this court equate a proceeding brought pursuant to the Judiciary Law to one brought pursuant to the Penal Law since the respondents were given notice and an opportunity to make a defense. The recognition of such an analogy would require finding that "Purging of the contempt, therefore, is not permissible” (People v Leone, supra, at 318). Respondents, on the other hand, urge the position that Leone clearly articulates a statement that all forms of contempt not prosecuted in a criminal court by indictment permit a showing of conduct sufficient to purge the contemnor.
The court in Leone (supra) considered the crime of contempt distinct from summary contempt, both civil and criminal. Implicit in the opinion of the majority and in the concurring opinion is the recognition of all proceedings brought under the Judiciary Law to be summary contempt. The majority notes: "Not to be confused with the crime of contempt, as defined in the Penal Law, is summary contempt, either civil or criminal.” (People v Leone, supra, at 317; emphasis added.) The Judges further stated: "Unnecessary to reach, and probably incorrect, is the conclusion that under no circumstances may a 'criminal’ summary contempt be purged. In fact, this court has concluded, in some circumstances at least, that one summarily adjudged in criminal contempt pursuant to section 750 *318 of the Judiciary Law ' "holds the key to his freedom” ’ * * * Arguably, implicit in such a conclusion is the ability to purge some criminal contempts as distinguished from crimes of contempt.” (People v Leone, supra, at 318.) Respondents are further supported in their position by the court in Matter of Ferrara v Hynes (63 AD2d 675 [2d Dept 1978]), where the court ratified the correctness of holding the appellant in contempt for his failure to comply with a validly issued subpoena but vacated the adjudication because he subsequently did appear and testified before the Grand Jury, thereby purging himself of the contempt.
More recently, in Midlarsky v D’Urso (133 AD2d 616, 617 [2d Dept 1987]), the court stated: "The court is vested with broad discretion in determining appropriate conditions upon which a contemnor may purge the contempt (see, Matter of Nestler v Nestler, 125 AD2d 836, 837; Busch v Berg, 52 AD2d 1082, 1083; Matter of Storm, 28 AD2d 290, 292-293).” This court concludes that it has the authority to conduct a purge hearing where criminal contempt is founded upon the Judiciary Law and not the Penal Law.[4]

Can The Court Change The Criminal Contempt Adjudication In This Proceeding?

The procedural history is dispositive of this inquiry. The orders, judgments and warrants of commitment were entered in these proceedings on June 28, 1989. Thereafter, the Appellate Term affirmed and leave to appeal to the Appellate Division, Second Department was denied by both the Appellate Term (June 1990) and the Appellate Division (Aug. 1990). Reargument for leave to appeal was denied by the Appellate Division in December 1990. Respondents moved by orders to show cause for the purge of civil and criminal contempt.[5]
What effect would the rehearing by the trial court of a matter adjudicated on its merits by the Appellate Term and denied leave to appeal by the Appellate Division? The Court of Appeals held in Sheridan v Andrews (80 NY 648 [1880]), that a lower court is without power to review its decision after review and affirmance by the higher court. More recently, the *319 Appellate Term affirmed Blumenstock v Weissman (47 Misc 2d 266, 268 [Westchester County Ct 1965], affd 50 Misc 2d 119), wherein Judge Trainor quoted: " 'That the surrogate or the Special or Trial Term is without authority to vacate or modify, or even correct its decree or order after affirmance by the Appellate Division’ ” (quoting Matter of Balfe, 174 Misc 279, 283). The court in Blumenstock (supra, at 268) noted, as have many before it, that "[t]he reason is obvious for '[w]ere it otherwise, there would be no such thing as a final end to litigation, and suits and decrees, on the same subject matter, would be multiplied so as to become embarrassing, inconsistent, and oppressive.’ ”
This court has no authority to hear the motion to purge a finding of contempt affirmed by its superior courts. There remains the prayer for modification of the sentence.

Can The Court Modify The Sentence Previously Given?

Upon cursory reflection after the above conclusion, it would appear that this query could be easily answered. But the truth is to the contrary. It appears to be clear that, in general, a court loses the authority "to vacate or modify, or even correct, its decree or order after affirmance by the Appellate Division” (Matter of Balfe, 174 Misc 279, 283, supra). Yet there seems to be a chiseled niche, yet in formation, for the embodiment of a modification like that which respondents seek. The court of original jurisdiction has only limited authority to review a sentence, as was noted in People v Tavano (67 AD2d 1090 [4th Dept 1979]). The court in Tavano cited Matter of Hennessy v Cunningham (57 AD2d 298). The Hennessy court quoted the Court of Appeals in People ex rel. Woodin v Ottaway (247 NY 493, 495) in its assessment of the authority to review a sentence: "the jurisdiction of the court of original jurisdiction [is not] lost by appeal to the Appellate Division and affirmance by that court before the application for a stay was made ([Woodin v Ottaway] id., p 496). Finally, it concluded, that a judgment of affirmance by it or the Appellate Division was not an expression of opinion as to the propriety of staying or suspending the execution of sentence, since '[t]here is no jurisdiction in either court to express such an opinion with any authoritative force’ (id., p 497). With respect to the final holding, however, the Court of Appeals has more recently held that the Appellate Division under its broad powers to reduce sentences may hold, in a proper case, that execution of sentence be suspended (People v Zuckerman, 5 NY2d 401, 403-404; *320 see, People v Speiser, 277 NY 342). To the extent that Woodin held that the court of original jurisdiction retained jurisdiction to stay or suspend execution of sentence, we believe it is still viable law. Nonetheless, in light of Zuckerman, that power retained by the court of original jurisdiction with respect to a change in sentence after appeal and affirmance by the Appellate Division is, however, very narrow and available only when sentence has not commenced to run as defined by former Correction Law (§ 231 * * *) and, also, only for those matters which arise subsequent to appellate review (accord, People v Canna, 35 AD2d 1062).” (Matter of Hennessy v Cunningham, 57 AD2d 298, 300-301, supra.)
The facts in Hennessy (supra) do not strictly fit those in the case at bar, but that case provides momentous assistance to this court in an area that has not been directly considered by an appellate court. The courts have held that the trial court may effect a sentence after affirmance where there has been some factual change in the case which arose after the appellate review. Thus, the question here is whether there was a factual change after appellate review. In this case, the facts came to light after the appellate review, though it appears that they existed before. The facts relevant to whether the respondents were in contempt of this court’s order came to light during the hearing to purge an already adjudicated contempt.[6]
The sentence in question is intended to punish the wrongdoer for actions which defame the authority of the judiciary. The magnitude of such actions is relevant to an appropriate punishment for same. Having received evidence which shows significant correction of the violations cited, and being mindful of this court’s order of payment of more than $250,000, this court sees no public policy benefit to incarceration of J. Leonard Spodek.
The court finds it more appropriate to have this respondent alternatively punished. Based upon all of the surrounding *321 circumstances, respondent Spodek’s sentence is modified from 30 days’ incarceration to 200 hours of community service. Attorneys for the parties are to appear before this court, at Part 3 of the Supreme Court, Kings County on April 24, 1992 for argument on suitable placement for community service.

. It is of note that the Appellate Term found that the tests for civil and criminal contempt set forth in Matter of Department of Envtl. Protection v Department of Envtl. Conservation (70 NY2d 233 [1987]) had been met.

. The Appellate Term’s finding noted in footnote 2, together with its finding that the denial of the motion to vacate the defaults was proper would, in any event, make such an argument impractical.

. Petitioner withdrew its claim for civil contempt incarceration after being satisfied, during the course of hearings on the motion, that the respondents no longer had control of the subject premises.

. In its determination that purge may be factually appropriate on the facts before the court, it is noted that the evidence herein shows significant progress with regard to the removal of building code violations and that this court ordered payment in excess of $275,000 to the Department of Housing Preservation and Development for civil penalties.

. Civil contempt incarceration is not herein considered. (See, n 4.)

. It is noted that the respondents, by their default controlled the lack of information which might have shown the work done to correct the cited violations at the subject premises. As to that, the court acknowledges the finality of a decision after default. The court also acknowledges that in determining that a purge hearing was correct, it determined that the unheard facts were relevant to a determination of appropriate punishment.