ABBOTT EDSALL, by his guardian Gilbert Pearsall, *vs.* GEO.
VANDEMARK.

A guardian ad litem cannot of his own mere motion, and without the order
of the court, make an absolute settlement of the whole matter in contro-
versy, so as to bind the infant.

THIS is an action brought by the plaintiff to recover dam-
ages for an injury caused by the alleged negligence of the
defendant in driving a horse and sleigh against the plaintiff
in the highway, by which the plaintiff was injured, and the
sight of one of his eyes destroyed.

The defendant by his answer denied the allegations of the
complaint, and alleged negligence on the part of the plain-
tiff, causing or contributing to the injury. And by a sup-
plemental answer the defendant alleged that since his former
answer was put in, to wit, on the 19th day of September,
1860, the said action had been settled by and between the
defendant and the guardian, *ad litem,* for the plaintiff in
this action, said plaintiff being an infant, and having prose-
cuted said action by his said guardian, by which settlement,
in consideration of one dollar paid by the defendant to the
said guardian, it was agreed by and between the said guar-
dian and the defendant that the action should be discon-
tinued on payment by the defendant to the plaintiff's attor-
neys of their taxable costs and disbursements in said action;
and the guardian did thereby relinquish all claim and cause
of action made by the plaintiff in said action against the de-
fendant. And he averred that the plaintiff's costs and dis-
bursements in the action were on the same day duly tendered
to the plaintiff's attorneys, by the defendant, which tender
had been from thence hitherto kept good, and the moneys to
pay the same had been kept at all times ready to pay to the
said plaintiff's attorneys the said costs and disbursements
whenever they should choose to receive the same; and the
same were now ready here in court for that purpose.

On the trial the defendant offered to prove that the cause

had been settled by him, with the plaintiff's guardian ad litem in this action, as alleged in the supplemental answer. The plaintiff objected on the ground that the guardian could not settle the suit without leave of the court. Objection sustained, and the defendant excepted. The defendant having rested moved for a nonsuit, on the grounds, 1st. That no negligence was shown on the part of the defendant; and, 2d. That the evidence showed that the plaintiff himself was guilty of negligence, and that his negligence contributed to the injury complained of. Motion denied, and the defendant excepted. The judge then charged the jury on the law of the case; and the jury found a verdict for the plaintiff for $475 damages.

Whereupon the court ordered that judgment be suspended, and that the defendant have thirty days to make and serve a case or bill of exceptions.

The defendant moved, at special term, that the verdict be set aside and a new trial granted. The motion was denied, and the defendant appealed.

*T. Farrington,* for the appellant. I. The action had been settled before the trial, and the justice erred in excluding the evidence of the settlement. The ground of exclusion was that the *guardian ad litem,* who made the settlement with the defendant, had no authority to make it without the consent of the court. This ground we contend is not tenable; but, on the contrary, the guardian ad litem had full authority *virtute officii,* to settle the suit. The action could not be prosecuted without the sanction and authority of the guardian. No attorney could even be employed without his authority. The attorney is the creature of the guardian, and derives all his power from him. The attorney is *subordinate* to the guardian, and has no power in the action not conferred by him. Has an attorney in the action power to settle the suit without leave of the court? (*See Gaillard* v. *Smart,* 6 *Cowen,* 385.) The court hold in that case that

" an attorney may discontinue a suit in virtue of his general power as attorney on record." *Paine & Duer,* (*Practice,* vol. 1, *p.* 198,) in speaking of the attorney's authority, say : " An attorney cannot compromise the rights of his client, although it has been held that he may submit them to arbitration ; (7 *Cranch,* 436 ;) and he may give a cognovit; (10 *John.* 221, 6 *Cowen,* 387 ;) or enter a remittitur *damna;* (10 *John.* 221 ;) or a discontinuance." (6 *Cowen,* 385.) Much more then may the guardian, by whom the attorney himself was created, do the same act ; settle or discontinue the suit. A guardian may submit an action pending to arbitrators on behalf of his ward, and such submission will bind the infant. (*Weed* v. *Ellis,* 3 *Caines,* 252.) If a guardian has power to submit a pending suit to arbitration, it is not easy to see why he has not the power himself to settle it. If he may submit a controversy to others to settle, it is clearly illogical to say that he has not the power to settle it himself. Can he impart to others powers which he himself does not possess ? The very object of an appointment of guardian is that he may bind the infant, who cannot bind himself. A guardian is unlike a receiver, who is the mere instrument of the court. The guardian when appointed asks no leave of the court to bring an action. Why should he ask such leave to discontinue it, when brought ? His own judgment in both cases is to be the criterion of his action. A settlement by a general guardian of an infant, with executors for the infant's share of the testator's estate, is binding upon the infant, so far as to throw the burden of proof upon the ward on coming of age, of error in the settlement. (*Dakin* v. *Demming,* 6 *Paige,* 95, 100.) In other words, the acts of a guardian are to be taken as legal and honest, and therefore binding, until impeached for error or bad faith. And it makes no difference that in the present case the guardian is a guardian ad litem and not a general guardian. His powers, so far as they extend, (limited to the bringing and con-

ducting this action,) are just as ample within their limited scope, as those of a general guardian ; and he is to be guided by the same principles, "fidelity, ordinary diligence and prudence in the execution of his trust." (*White* v. *Parker*, 8 *Barb.* 48.)   In the case at bar there is no pretense that the settlement was unfair or fraudulent ; but simply " that the guardian could not settle the suit without leave of the court."   Besides, the guardian has a pecuniary interest in the matter; his liability to his adversary for costs of the action.   Is the court to determine how long and to what extent this liability is to continue ?

II.  To the injury complained of by his negligence, the plaintiff himself contributed.   The injury occurred in the highway ; an even, plain, open road of usual width, having several beaten tracks for teams — the river on one side of it and a fence on the other ; with a beaten foot-path next the fence, just outside of the track for teams ; the road being much traveled by the public, and teams passing to and from the Smithboro' depot on the Erie rail road.   The plaintiff in his testimony gives this account of the occurrence :  " I had been at school in Nichols ; I was returning from school at noon ; I was going along kicking the snow, with my head down.  Edgar Morey and Sullivan Morey were with me ; I was on my way home, on a walk ; I was on right hand side of the road and within two feet of the fence ; road was of the ordinary width ; Edgar said to me, ' look out ;' I looked up and jumped one side ; my foot slipped and cutter thill struck me in the eye at the same time and knocked me down."   He further says :  " when I looked up, was the first I saw the cutter or men in it."   " If I had been looking up I could have seen from the school house to above where I was hit ; I could see a good part of the road nearly up to the grist mill, which is above where I was hurt ; could have seen teams if they had been out in the road ; I did not see the horse and cutter at all until I was hit."   All this shows conclusively that no injury would have occurred to plaintiff,

Edsall *v.* Vandemark.

had it not been for his own folly in going into a much used public highway with his head down, and his attention engrossed by kicking snow, instead of looking out for his personal safety. Nor is there any conflict of evidence on this point. He says, "if he had been looking up he could have seen." But why was he not "looking up?" If he "had been looking up and had seen," as was his business to do, would he have been injured? Nobody could so pretend. Is it the business of a prudent person to go into the street blindfold, and amuse himself with kicking snow? It is not enough that the defendant drove his horse carelessly and negligently; but it must appear that the plaintiff himself is free from fault. If he has in any degree contributed to produce the injury complained of he cannot recover. On this point it is useless to cite cases, the principle being so familiar. The case of *Wilds* v. *Hudson River Rail Road Co.* (23 *Howard's Pr. Rep.* 492,) is a mere reiteration of the acknowledged doctrine on this subject, and is a sufficient guide in the present case.

*Warner & Tracy,* for the respondent. I. The offer of defendant to show the settlement was properly rejected. In his supplemental answer the defendant sets up that the *guardian ad litem* of plaintiff had for a valuable consideration settled the action, and "*relinquished all claim and cause of action against defendant,*" and his offer was to show that the *cause* had been *settled* as alleged in the supplemental answer. The proof was therefore offered as a *bar* to the cause of action, and if it had been received, and a judgment rendered upon such an issue, the plaintiff could never afterwards have maintained an action against the defendant for the injury he had sustained. He did not therefore rely upon an agreement to *discontinue the action,* (and if he had his proper remedy would have been by motion to compel the entry of an order to that effect, and that the cause be stricken from the calendar rather than to give such

agreement in evidence after a trial upon the merits;) but he took the broad ground that the " *cause had been settled.*" And the sole question presented is whether a settlement of *the cause of action* made by the next friend of an infant plaintiff, without order of court, will operate as a bar against the infant. The guardian ad litem of an infant plaintiff is appointed "as a person who may be responsible to the court for the propriety of the suit in its institution and progress." As an infant cannot employ an attorney, nor render himself liable for costs, this next friend, or guardian ad litem, is appointed to take his place and assume those liabilities in the *conduct* of the suit to which the rules of mutuality require both parties should be bound, but which the infant himself cannot incur. (2 *Barb. Ch. Pr.* 201.) Hence the law allows no infant to prosecute an action unless he appears by such guardian, and the guardian assumes the liability, in order that the infant may have the benefit of an action. The powers and duties of such a guardian would therefore seem to be confined entirely to the performance of such acts, and to the incurring of such responsibilities as the necessities which induced his appointment demand, and though the term *guardian* is used, it has never been supposed that there was any necessity for the next friend of an infant plaintiff to exercise the authority of a general guardian of the infant's property, or have any relation to his affairs, other than the conducting to a conclusion the particular action in which he is appointed. Thus before the code, the infant plaintiff appeared by *next friend,* who is defined to be, "He who without being appointed *guardian* sues in the name of the infant for the recovery of the rights of the latter." (*Bouvier's Law Dic. Prochien Amy.* 388.) So also he was first appointed by Statute Westm. 1, in case of necessity, when an infant was to sue his guardian. (*Jacob's Law Dic. under Prochien Amy.* 310.) And the rule which appoints him "admits him to *prosecute* for the infant a certain action," &c. (*Tillinghast's Forms,* 136.) The courts have also ex-

ercised control over the next friend of infants, and directed their proceedings in such manner as would be most conducive to the infant's interests.    Thus he will be removed, if he does not faithfully *prosecute* the action.    (*Russell* v. *Sharp,* 1 *Jac. & Walk.* 482.)    So if he take any proceeding which is incompatible with the prosecution of the suit, a reference will be ordered to see if he ought not to be removed.    (*Ward* v. *Ward,* 3 *Mer.* 706.)    So a next friend cannot withdraw himself without a reference to inquire. if it is for the benefit of the infant.    (*Melling* v. *Melling,* 4 *Madd. C. R.* 261.    *Edw. on Parties,* 187, 188, 189.    2 *Barb. Ch. Pr.* 205.)    Neither can a guardian ad litem admit or concede matters that he could if the cause were his own.    (*Litchfield* v. *Burwell,* 5 *How.* 341.)    Nor has he any power to submit a controversy without action.    (9 *Abbott,* 34.)    The very definition of his title; the reason of his appointment; the language of the rule which is his authority to act; and the control which the courts have ever exercised over him, as shown by the cases above cited; all show that the guardian ad litem of an infant plaintiff is confined in his duties to a faithful prosecution of the action, and has no power to release or settle away valuable rights of action belonging to the infant.    The *right of action* is the infant's *property.*    It existed before the suit was commenced, and is *property,* independent of any suit whatever, and the guardian has no more right to convey it away because there happens to be a suit connected with it, than he would have to convey away the infant's farm if it happened to be the subject of litigation.    It does not follow that because the guardian is liable for costs, he has, or ought to have, the power to settle the suit.    That argument would at most give him no more than the right to *discontinue,* but in fact it is no reason why he should do either.    Having commenced the suit the guardian undertakes that it is for the infant's benefit, and *he* may not apply for a reference to determine the point. (*Jones* v. *Powell,* 2 *Meriv. C. R.* 141.)    The court looks to the interests of the infant, not to those of the guardian, who

having undertaken the trust, must discharge its duties until it is fully executed. Even the attorney or counsel of a plaintiff cannot *settle the suit* without special authority. (*Shaw* v. *Kidder*, 2 *How*. 244. 6 *Cowen*, 385.) The infant not being bound by a settlement of the cause of action had with the guardian, proof of such fact was immaterial and improper.

II. There was no error in the refusal to nonsuit. As regards the defendant's negligence, it was shown, that after having seen the boys six or seven rods ahead of his horse, he deliberately drove on a fast trot, out of the beaten track, over on to the foot path a few inches from the fence, and on to the plank laid down for foot passengers and where they were accustomed to walk. That he there ran against plaintiff with such force as to knock him "straight ahead of the horse off his feet," the thill of the cutter knocking out his eye. He does not pretend that he gave any notice to the plaintiff of his coming, but it appears that he used so little care to stop, or avoid the collision that the boy *behind* the plaintiff had to jump upon the fence to escape being run over also. Surely this accident was not unavoidable. Even if the defendant desired the benefit of the snow on the foot path, and had a right to be there, ordinary prudence required him to slacken his speed, and drive with a *view to the safety* of a crowd of children which he sees a few rods ahead of his horse, instead of the rapid and inattentive, if not reckless, manner in which he did. It can hardly be contended that a jury would not be warranted in predicating negligence upon such a proceeding as this, on the defendant's part, or that the court should decide, *as matter of law*, that the defendant was free from all negligence in causing the injury. But the defendant claims that the proof establishes, as matter of law, culpable negligence on the part of the plaintiff which contributed to the injury, and that therefore he should have been nonsuited, and he bases this claim upon the fact that the plaintiff "was going along, kicking the snow with his head down." The

Edsall *v.* Vandemark.

whole proof shows that the plaintiff was on the path appropriated to footmen, and on the plank walk laid down for their use; that it was not the custom to drive horses and sleighs on that path, but that there was a well defined track where they were in the habit of driving at a safe distance, 3 or 4 feet from the foot path. The plaintiff was lawfully in the path, which was the most appropriate and safe place on the road for him to be in. The wind blowing hard in his face caused him to walk with his head down : and it is such an act, done under such circumstances that this court is called upon to pronounce *culpable negligence, as matter of law.* The plaintiff was not bound to use *unusual* precaution and watchfulness, but only *ordinary care,* such as a prudent man would take under similar circumstances. (*McGrath* v. *The Hudson River R. R. Co.,* 32 *Barb.* 144. *Fero* v. *Buffalo & State Line R. R. Co.,* 22 *N. Y. Rep.* 215. *Johnson* v. *Hudson River R. R. Co.,* 20 *N. Y. Rep.* 65.) *Judge Selden,* in speaking of a plaintiff's negligence in a similar case, says : "If there are inferences to be drawn from the proof which are not *certain and incontrovertible,* they are for the jury. If it is necessary to determine, as in most cases it is, what a man of ordinary care and prudence would be likely to do under the circumstances proved, this involving, as it generally must, more or less conjecture, can only be settled by a jury." (*Bernhardt* v. *R. & S. R. R. Co.,* 23 *How. Rep.* 168.) We suppose no court would feel warranted in holding that the inferences drawn from the proof in this case, to establish the plaintiff's *culpable negligence,* are "*certain and incontrovertible.*" The defendant had no peculiar and exclusive right to that path, and there was no reason for the plaintiff's apprehending any danger from teams being driven over him on the sidewalk. On the contrary the universal custom and habit was opposed to such an idea, and if the case admits of any question at all, it seems eminently proper that a jury should decide what a man of ordinary care and prudence would have done under these circumstances. (*See remarks*

*of Judge Johnson,* 3 *Kern.* 533.)   Besides, the evidence shows willfulness, or at least such gross negligence on the defendant's part, as to entitle the plaintiff to recover, though he were himself guilty of negligence.   (19 *Wend.* 401.   21. *id.* 615, 619.)   He attempted to run over the girls, and it may well be inferred that he was engaged in the same amusement when the plaintiff was struck.   But a short distance intervened between the girls and boys, yet he scattered the boys as he did the girls, and never slackened his speed until the plaintiff had been "knocked clear off his feet." Such acts manifest a deliberate and willful intent on the defendant's part, and the plaintiff was entitled to have the case left to the jury upon that question.

*By the Court,* CAMPBELL, P. J.   On the main question of fact, as to negligence, there is no ground for disturbing the verdict.   The charge of the judge was not objected to, and there were no requests to charge.   We must presume the judge laid down the law correctly.   The motion for a nonsuit was properly denied.   The evidence tended to show that the defendant was chargeable with gross if not with willful negligence.   He drove his horse, on a trot, among a number of children just out of school, and with a wind beating in the children's faces.   It was exceedingly doubtful, to say the least, whether there was negligence on the part of the plaintiff which in any degree contributed to his injury.   Under what we know to be the ordinary, and which we are bound to presume was the actual charge of the judge, the jury must have found that the defendant's negligence was the sole cause; unless they may have found that the defendant was grossly and willfully negligent.   In either view there was no error.

But the defendant alleged in his answer, and offered to prove, on the trial, that he had settled the action, with the guardian ad litem, and he claimed that by virtue of such settlement he was entitled to a discontinuance.   It is unnecessary to consider whether a guardian ad litem might consent

Edsall *v.* Vandemark.

to a discontinuance of the action, leaving the subject matter of the action still in existence and to be adjudicated in another action either instituted by himself, by another guardian, or by the infant on arriving at age. The question raised is, can he of his own mere motion make an absolute settlement of the whole matter in controversy? I am clearly of the opinion that he cannot. The only source of power, for the guardian ad litem, is the court. The appointment is made not by the infant but by the court, or a judge thereof. He is appointed to prosecute the action, and he may employ the ordinary and customary means to bring it if possible to a successful termination. The authority conferred upon him is to prosecute, not to settle; to obtain for the infant an adjudication as to his rights—not to barter away those rights in such manner as the guardian may choose. Certainly no such settlement could be binding on the infant, except made with the express sanction of the court.

If we were to consider the guardian in the light of an agent appointed to enforce a claim, or collect a debt, as such he is not, unless some special authority beyond the ordinary reach is given to him, clothed with authority to commute the debt for another thing, or to compound the debt, or to release it upon composition. (*Story on Agency*, § 99.) The employment of an attorney is "to prosecute or defend the suit in question," and he cannot, under his general authority, compromise his client's debt. He may discontinue an action, and he may enter into an agreement to discontinue, but he cannot, without special authority compromise the debt, or relinquish or settle the subject matter of the action. (8 *John.* 361; 10 *id.* 220, and other cases cited in *Graham's Practice*, under the head of "authority of an attorney.")

This action illustrates the necessity of confining the question within the strict limits of his authority. By the culpable negligence of the defendant, if not by his willful negligence, the plaintiff—a lad of about fifteen years of age—lost an eye. His guardian, appointed as his friend to prosecute the action,

agreed to settle the matter for one dollar, and the plaintiffs' costs. The jury awarded to the plaintiff $475. This I think was a small verdict. Such a settlement was a fraud, as against the infant, and should not be permitted to stand, even if the guardian had been clothed with authority to make it.

The order made at special term denying a new trial should be affirmed with costs, and there must be judgment on the verdict.

[BROOME GENERAL TERM, May 12, 1863. *Campbell, Parker* and *Mason,* Justices.]