SAMUEL M. FIELD, Appellant, *v.* GLADYS MARY MOORE, Otherwise Known as MARY PICKFORD, Respondent.

First Department, December 5, 1919.

**Attorney and client — when attorney does not represent conflicting interests so as to bar his right to compensation.**

In an action by an attorney to recover alleged legal services claimed to have been rendered to the defendant, a moving picture actress, it appeared that the plaintiff with the express consent of a film corporation by whom he had been retained and of its president effected the release of the defendant from an oral contract with another corporation and also from any obligation under a tentative offer which she had made to another employer and that she was subsequently employed by said other corporation, and that the only possible interest that the plaintiff's client the film corporation, or its president could have had in defendant was its or his desire to engage her services.

*Held,* on all the evidence, that there were no adverse interests between the defendant and said film corporation and that, therefore, it was error to dismiss the complaint upon such theory.

If an attorney attempts to serve two masters or to represent adverse interests or to discharge conflicting duties he is not entitled to compensation from either party. But it is only where the nature of his work or advice is such that he would find himself aiding one as against the other or being compelled to choose between them that the dual service will be held improper.

APPEAL by the plaintiff, Samuel M. Field, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 23d day of April, 1918, upon a dismissal of the complaint by direction of the court at the close of the plaintiff's case after a trial by a jury at the New York Trial Term.

*J. Hampden Dougherty, Jr.,* for the appellant.

*M. L. Malevinsky* of counsel [*Dennis F. O'Brien* with him on the brief; *O'Brien, Malevinsky & Driscoll,* attorneys], for the respondent.

MERRELL, J.:

This action is brought by the plaintiff, an attorney and counselor-at-law, to recover for alleged legal services which he claims he rendered to the defendant, pursuant to employ-

ment by her, and which legal services he alleges were of the value of $5,000.

The defendant, Gladys Mary Moore, or Mary Pickford, as she is popularly known, is a moving picture actress of prominence. In 1915 the defendant was under contract with a corporation known as the Mary Pickford Famous Players Company whereby she displayed her talents as an actress in posing for and in the manufacture and production of moving pictures. Under her contract, which expired in December, 1915, she received a salary of $2,000 per week. The corporation with whom defendant was thus under contract was managed by one Adolph Zukor. Under an oral arrangement, which appears from the evidence to have been somewhat indefinite, the defendant continued in the employ of the corporation managed by Zukor during the early part of the year 1916 at a salary of $4,000 per week. However, it appears from the evidence that in March of that year the defendant had been the recipient of propositions and offers for her services of compensation in excess of the $4,000 per week which she was then receiving from the Zukor corporation. The defendant claimed the right to terminate the oral arrangement under which she was then acting and to enter into other contracts for her services. On March eighteenth she made a tentative agreement in writing with one Hampton whereby she was to receive a salary for her services of $7,000 per week, but owing to the failure of Hampton to furnish security for performance on his part, such contract never appears to have materialized.

It is claimed by the plaintiff that in such situation the defendant, first, through her mother, who acted as her business manager, and, afterwards, personally, sought to employ the plaintiff as her counsel with a view of avoiding obligation upon the oral contract with the Zukor corporation with whom she had been under contract, and also with a view of avoiding any obligation under the tentative offer which she had made to Hampton, which had not been consummated. These negotiations, whereby plaintiff claims his services were sought and obtained by the defendant, occurred in March, 1916, according to plaintiff's testimony. At that time plaintiff had recently been admitted to practice as an attorney and counselor-

at-law in the courts of this State. Formerly he had been a member of the Wisconsin bar and had moved to New York early in the year 1915, under a retainer by the Mutual Film Corporation, whereby he acted as the counsel of said corporation at an annual salary. It is claimed by the plaintiff that at the time his services were sought defendant was anxious to be freed from contractual obligations to the corporation managed by Zukor and to Hampton, with whom she had been negotiating, and that at that time there were several concerns and persons interested in the production of moving pictures who were anxious to negotiate with defendant for her services as a moving picture actress; that among others a Mr. Freuler, president of the Mutual Film Corporation, whose attorney plaintiff was at that time, was anxious to make some arrangement and contract with the defendant for her services. The plaintiff alleges that with the express consent of the Mutual Film Corporation and Mr. Freuler, its president, he undertook to assist the defendant as her counsel, and that he furnished her with counsel and advice and rendered legal services the result of which was that she was able to be relieved from obligations under the two contracts with the Zukor corporation and with Hampton, and that being released therefrom, she was thereafter enabled to and did enter into a very favorable contract with the corporation managed by Mr. Zukor, with which she had theretofore been under contract, and under which new arrangement she was to receive the sum of $10,000 a week for her services. It is claimed that at that time Freuler, representing the Mutual Film Corporation, was particularly anxious to obtain the services of the defendant, and had made a bid therefor of $15,000 a week, but the contract was finally made between defendant and her old employer, managed by Zukor. Plaintiff testifies that defendant's mother and business manager brought to him a proposed contract which was finally entered into between defendant and the Zukor corporation, and that he carefully examined the same, made suggestions with reference to its provisions, and safeguarded the interests of the defendant with reference thereto. For his services in all these matters, to which he testifies in great detail, the plaintiff alleges he has earned as the value of such services

the sum of $5,000, for which he demands judgment. Upon the trial evidence was given showing that such services were worth the amount charged.

At the close of the plaintiff's case the learned trial court dismissed plaintiff's complaint upon the theory that plaintiff, at the time of his alleged employment by defendant, represented the Mutual Film Corporation, whose interests, as the court apprehended, were adverse to those of the defendant, and that, therefore, the plaintiff was in no position, ethically, to serve the defendant and act as her counsel in matters where he was under employment by those adversely interested.

The law seems to be well settled that an attorney may not serve two masters and may not represent adverse interests or undertake to discharge conflicting duties, and that if he attempts to do so he is not entitled to compensation from either party. It was upon the assumption that the evidence presented by plaintiff in support of his cause of action showed that he was attempting to serve adverse interests that the learned trial court dismissed plaintiff's complaint. The court, in reaching its determination in this respect, said, in part: " It is my view that the testimony shows it is quite obvious that Mr. Field, while purporting to represent the defendant, Mrs. Moore, was in fact, tied to Mr. Freuler and his company, the Mutual Film Company, by ties so close as to prevent him from giving disinterested advice, the advice that an attorney ought to give to his client, to Mrs. Moore. Of course, the mere fact that at one and the same time he represented two different clients would not make it improper for him to act for both. It is only where the nature of his work or advice is such that he would find himself in the equivocal, anomalous position of aiding one as against the other, or of being compelled to choose between them, that the dual service would be improper. In other words, there must be a conflict of interest before it becomes unethical for a lawyer to represent both. But the moment that conflict, or probability of conflict, arises, or is seen, he must cleave to one, and give him the best that is in him, which, of course, means that he must abandon the other, giving the other suitable opportunity to employ a new attorney."

The law, as thus stated by the learned trial court, was

undoubtedly correct. (*Eisemann* v. *Hazard*, 218 N. Y. 159.) The difficulty with this case is, from an examination of the evidence, I am unable to discover any adverse interests between the defendant and the Mutual Film Corporation, for which plaintiff was serving as counsel, or Freuler, its president. Indeed, the interests of the defendant and plaintiff's other client seem to have been in entire consonance. Defendant was anxious to be rid of embarrassing contracts which might prevent her from obtaining other more advantageous contracts and higher compensation for her services. The only possible interest that plaintiff's client, the Mutual Film Corporation, or Freuler could have had in defendant was its or his desire to engage her services, and so long as she was bound by other contracts they could not take steps to procure a contract with her. In other words, any possible interest they could have would be in line with that of the defendant to first rid herself of the entanglement of other contracts. The consent of Freuler that the plaintiff render the defendant legal services and furnish her counsel with reference to these contracts was freely given before plaintiff made any arrangement with the defendant. Freuler understood that there was no chance for him to make an arrangement with the defendant until she succeeded in relieving herself from possible obligations under other existing contracts. Hence, in serving the defendant, plaintiff was not acting adversely to the interests of his regular employer. When the final consummation came upon the execution of a new contract by the defendant, it was not with plaintiff's client, the Mutual Film Corporation, or Freuler that said contract was made, but with Zukor's corporation at a less figure than that offered by the Mutual Film Corporation represented by Freuler. Therefore, it cannot be said that there was ever any conflict of interest between the defendant and the Mutual Film Corporation by which plaintiff was employed under an annual retainer. If the case had been presented of plaintiff accepting employment as counsel for the defendant when he was serving as attorney and counsel for the Zukor corporation, or for Hampton, from whose contracts defendant was seeking to be relieved, a different situation would be presented, as there the plaintiff would be precluded from serving parties whose interests were antagonistic.

The defendant's answer puts in issue and it is insisted upon this appeal that no contract of employment was ever entered into whereby plaintiff was retained by the defendant, and it is denied that plaintiff rendered the defendant legal services of the value claimed. These questions are not before us on this appeal, and are issues properly to be determined upon a new trial.

The judgment appealed from should be reversed and a new trial granted, with costs to the appellant to abide event.

CLARKE, P. J., LAUGHLIN, SMITH and PHILBIN, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.