Helen Bose, an Infant by Mary Bose, Her Guardian ad Litem, et al., Plaintiffs, *v.* Bruce Wehrli, an Infant by Albert Wehrli, His Guardian ad Litem, et al., Defendants.

Supreme Court, Trial Term, Nassau County, December 27, 1945.

*Curtis & Eberlein* for plaintiffs and defendants.

CUFF, J. This is an application for leave to compromise the claims of two infants against the defendants, one of whom is an infant.

The infant plaintiffs were injured while passengers in an automobile the owner of which carried liability insurance. Representatives of the insurance company and the families of the infants (eighteen and sixteen years old respectively) agreed upon a settlement of the claims. No action was pending in which a compromise order, to effectuate the settlement, could be entered, so the services of counsel for the insurance company were importuned. They, as plaintiffs' attorneys, commenced this suit, which they call "a formal action", for personal injuries wherein the infants, by their guardians ad litem, respective parents, are plaintiffs, and the insured are the defendants. The attorneys who acted for the plaintiffs also appear for the defendants. Nothing in the record before me shows what happened in the suit after it was instituted. At this time I am not concerned with the arrangements of settlement. I am directing attention to the procedure.

This most unusual action, where the same attorneys openly appear of record and otherwise for plaintiffs and defendants, springs from a provision in the latter part of rule 294 of the Rules of Civil Practice (to be referred to herein as "the amendment") which was added in 1940 as follows: "If the infant and his guardian are not represented by an attorney, the papers required for the application [to compromise] may be prepared by the attorney for the defendant and shall state that fact, the terms of the proposed settlement and the facts with reference to the cause of action, but such attorney shall make no recommendation in reference to the proposed settlement. The court or judge under such circumstances shall make a full examination into all the facts regarding the reasonableness and propriety of the proposed settlement, and may refer the matter to an official referee for investigation and report thereon."

It should be observed at the outset that the innovation quoted seems to conflict with the first sentence of the rule itself, which provides: "No attorney having or representing any interest conflicting with that of an infant may represent such infant."

It might be well to consider the attitude of the court with respect to infants. The Court of Chancery in very early times took an active interest in infants' affairs and property. It regarded itself as the representative of the King, and the King looked after all those, like infants and incompetents, not capable of taking care of themselves. There has never been the slightest relaxation of that judicial grip, but on the contrary, the court's jurisdiction has been implemented by numerous extensions. Our court of equity has inherited the Chancery Court's jurisdiction. (*Matter of Knowack*, 158 N. Y. 482; *Sproule* v. *Davies*, 69 App. Div. 502, affd. 171 N. Y. 277.) While the law from those early times has required that an infant sue or be sued through a guardian ad litem, the court has never permitted the latter to settle or compromise an infant's interest in a law suit; it has reserved approval of any final disposition for itself. (*Edsall* v. *Vandemark*, 39 Barb. 589, 599.)

The premise upon which the amendment rests is stated in its opening clause: " If the infant and his guardian are not represented by an attorney * * *." Then follows an attempt to launch a lawsuit and perfect an important motion (a determination of the suit) without the services of an attorney for the aggrieved infant. To accomplish this, the amendment goes on: " the papers required for the application may be prepared by the attorney for the defendant ". Considering the protection which the law has cast about infants and its resolve to hold their interests aloof and safe from the hands or influence of any person who has or might have the semblance of an interest contrary to that of the court's ward, this departure seems to be an intrusion on that judicial watchfulness.

In this instance counsel considers, and I think properly, that " the papers " required to " be prepared " are the summons, complaint, petition, order authorizing the compromise and affidavits. Incidentally, when an attorney whose services have been importuned under this amendment or in any other manner draws a complaint or a petition, in which " the facts " are set forth, he must believe those statements and allegations to be true, to which he lends his name. Certainly, he could not in good conscience prepare papers for the court's consideration containing matter which he believed was not true. Perhaps the amendment means that the attorney can desert his office of advocate momentarily, become sort of inert, assume the position that, being without knowledge as to which version is the truth, he may submit both or as many versions as he uncovers. Whatever view is taken as to the intendment of the amendment, the

high calling and dignity of an attorney at law suffer horribly under its impact.

Having undertaken the task, the amendment commands the attorney to " state  *  *  * the facts with reference to the cause of action " in the petition. Assuming that he is to set forth the facts as they are presented by each side, he at some point is confronted with the duty of questioning plaintiff's witnesses. When talking to them, whom does he say he represents? If he follows the theory of the amendment, he will announce his relationship with the defendant and add that he is gathering the facts to present to the court in a petition to compromise the suit. In this instance he would say he represents all parties, but if challenged he would have to admit, " Yes, I am the insurance company's lawyer. I never saw this child before."

Witnesses become very partisan when they are satisfied someone, particularly a child, has been wronged. More persuasion than telling them about this amendment's economic ambitions will be needed to get them to talk. No matter how it is coated, the substance of the persuasion will be to convince those witnesses that the attorney is acting in the infant's behalf and for his benefit.

That he gathers facts — facts which will make or break the infant's lawsuit — from witnesses whose names were supplied by the infant's side to be included in the compromise petition, which is the infant's petition, is to serve the infant, to represent him. In the pleadings the attorney appears as " attorney for plaintiff ". Because the amendment strains itself to characterize that service by another name, renders no change in the relationship. " They [the court] cannot, under cover of procedure or to accomplish justice in a particular case, invade recognized rights of person or property." (*McQuigan* v. *D., L. & W. R. R. Co.,* 129 N. Y. 50, 55.) Though unnecessary, that case reminds us that no matter how desirable in the instant case, the court has no power to change the law.

Attorneys have never been permitted to serve on both sides of a litigated controversy. In *Herrick* v. *Catley* (1 Daly 512, 514) plaintiff, an attorney, retained by a wife to procure a divorce, called upon the husband stating that his visit was professional, carried back a message to his client, the wife, and eventually a reconciliation was effected by his efforts. He sued the husband for the services rendered to him and recovered. On appeal the judgment of the trial court was reversed on the law, the court holding that the attorney " could not act

on both sides." *Field* v. *Moore* (189 App. Div. 709, 712) is to the same effect, MERRELL, J., saying: " The law seems to be well settled that an attorney may not serve two masters and may not represent adverse interests or undertake to discharge conflicting duties * * *."

It is no escape from these ancient but healthful checks of the common law, which have preserved for the bar its high standing, for the amendment to avoid using the expression that the defendants' attorney may " represent " the infant or his guardian. The dodge that he may " prepare the papers " makes him no less the infant's representative to the extent he serves; *Herrick* v. *Catley* (*supra*) condemns " acting " for both sides, *Field* v. *Moore* (*supra*, p. 712) undertaking " to discharge conflicting duties ".

Under the authority of the amendment, the injured plaintiff's case is laid bare before the attorney for the defendant and his office staff, at a time when there is no assurance that there is to be no trial. Having acquired that confidential information, in just what capacity does the attorney possess it?

The amendment is silent as to whether such attorney shall be compensated by the infant's side of the litigation, although at bar the attorneys state that they are being paid by their client, the insurance company, and that they have not been and will not be paid by either plaintiffs or defendants.

The guardian ad litem was appointed on a petition which was presented to the court by the defendants' attorney. That conflicts with subdivision 2 of rule 40 of the Rules of Civil Practice which states " nor shall he [guardian ad litem] be nominated by any person having an adverse interest " to that of the infant.

The amendment would seem to be unworkable. From whom will the attorney obtain " the facts " for the petition? Should he set in motion the thorough and efficient insurance company's investigators to call upon witnesses whose names were furnished by the infant's side? Would his inherent sense of justice not recoil if a witness or condition were disclosed to him, of which the insurance company had no knowledge but which evidence would destroy the defense? What should he do? Suppose by careful investigation the insurance company discovers a similar situation which will be strong evidence for the defendant; if produced at the trial as a surprise, may that fact be omitted from his statement of facts under the force of precaution that there might be a trial? When he makes that decision, whom does he represent? These posers are unanswer-

able, because the attorney's role is unnatural. Many situations may be imagined. I have pointed to just two common occurrences.

It is no answer to the foregoing observations to say that the rule has application only when a settlement has been agreed upon and the preparing of the papers is merely *pro forma*. In the first place, the amendment is based upon no such hypothesis. In the second place, if that prior arrangement of settlement is to be regarded as having sounded the death knell of litigation between the parties, then "the approval of * * * the court" (Rules Civ. Prac., rule 294) of the compromise is reduced to rubber stamp service. I do not believe that the learned rulemakers had any such ideas.

It is appropriate to be reminded at this time that with frequency Special Term rejects compromises submitted, and trials follow.

After an attempt at compromising under this amendment has failed, the injustices that may arise are many and serious. The defendant's attorney, then discharged in favor of another for the plaintiff, would ever be in a quandary trying to decide what he learned from plaintiffs' side during the service he rendered in vain preparing the compromise papers, of which advantage he would be unwilling to avail himself. Then, of course, there would be the second compromise offer which, though inadequate, the new attorney in despair would recommend on the ground, "They know the weaknesses in our case; what else can I do?"

That part of the amendment which sounds like a safety valve, namely, that the court "shall make a full examination into all the facts regarding the reasonableness and propriety of the proposed settlement" is language only. It lacks substance. The court is without equipment to investigate, and less effort than that would be woefully insufficient to do justice in the premises. Court attendants and clerks may not be utilized for that purpose. Asking children and their parents to bring in witnesses will accomplish little. What is lacking is someone to find witnesses — persons who, unknown to the infant's side, saw the accident; witnesses who would be helpful; experts who would advise. The court has no such agent. The result is that *to make this* important determination the court lacks the proper information and facilities which would make possible the "full examination into all the facts" etc., which the rule impractically contemplates.

At the time infants' settlements are submitted, the practice is for the infants, guardians and the attorneys to appear before Special Term. The infants are either too young to comprehend, or they are not old enough to be satisfactory informants. The latter class of infants, including those up to twenty-one years of age, are ordinarily spellbound. They bow to the will of their parents, expressed or implied. They look to them for a suggestion, when questioned. They know one thing: the settlement is satisfactory to the folks and they want to further its completion. Children are of little aid to the court.

The parents, envisioning a complete discharge of their medical bills and other obligations growing out of the happening, with a little extra for '' loss of services '', have been '' softened up '' by the ultimatum '' Unless you get behind this settlement, there will be no settlement; we will pay no more '', and in a case like this, laboring under the prideful handicap that the settlement is their own product, under all circumstances, are more of a hindrance than a help to the court. (At bar the parents are to receive nothing for loss of services.) The court would be loathe to seek any worthwhile information from the attorney, enjoined under the amendment to refrain from recommending, because the court knows and the attorney knows that his first duty is to the insurance company (the alter ego of the defendant), and to ask him for concessions detrimental to its interests would be to embarrass him, rule or no rule. It is not that the attorney for the insurance company would be unfair to the infant, but the amenities demand that he be loyal to his own client; he just can't serve both. By virtue of the limitations in the amendment itself and the obvious embarrassment of the attorney under questioning, his presence before the court can hardly be called constructive.

Thus we have a rule which contravenes the law in that it authorizes an attorney to appear on both sides of litigation, wherein his interests are adverse; a rule which violates long-established legal doctrine to the effect that it is the obligation of the court to protect the interests of infants; a rule which provides a procedure, to which no adult is subjected, of questionable value at all stages but which may well destroy a good cause of action by reason of ignorance of parents of a penny-wise and pound-foolish attitude; a rule which seems to defeat its own objectives because it is unworkable.

The power to enact court rules is statutory (L. 1920, ch. 902, as amd. by L. 1921, ch. 370). Rules may create no remedies or procedure unknown to the course of the common law, and they

should be in harmony with statutes. (1 Carmody on New York Pleading & Practice, §§ 106-108.) The common law has invoked every legal device for the protection of infants and their property. This amendment tends to expose infants who are injured in their person or property to their enemies, so to speak. For the sake of saving someone, not necessarily the infant, the fee of an attorney, this concocted procedure where the infant's case is divulged in advance of trial to the persons he is about to sue, has been projected. It may save that fee in a few instances but over a long period of time and through many cases, infants will lose. Advantage of infants may be taken under the color of this amendment. It cannot be otherwise. The amendment invites the unwary parent to the office of the insurance company or defendant's representative, where he may be shown the amendment and advised and convinced: "You won't need a lawyer; save that expense." And if the victim falters, he can be justly told, after having heard read another part of rule 294, "You see, everything we do must have the court's approval". Such enticing bait could easily compel the unsuspecting parent to choose to go it alone. "Ignorance v. Knowledge" would be an appropriate title for the suit in all such cases.

Is the amendment not unfair to the Bar? That angle is a consideration which, while not controlling, is nevertheless noteworthy. In the contest for business, the printed amendment equips the "you-can-do-without-a-lawyer" side with a strong weapon of offense. The amendment officially belittles the services of a lawyer.

Is it not obvious too, that a broad field of operation is opened to the graduate insurance company investigator on his own, who would serve as the advisor of the procedure of taking the matter up directly with the insurance company. His compensation could easily be a part of the guardian's share, with respect to which arrangement, of course, the court would never be troubled.

The closely related procedure under which the defendant hires a lawyer to represent the infant plaintiff, leaves much to be desired in the way of honorable, efficient handling of an infant's claim. Concerning that practice in a disciplinary decision, the Appellate Division, First Department, (DOWLING, P. J.) said: "We do not approve of such procedure but we find it no censurable offense" (*Matter of Wilbur*, 228 App. Div. 197, 202) and more recently, the Second Department stated: "It should be discontinued." (*Matter of Paders*, 250 App. Div.

418, 420.) CREGG, J., made these pointed remarks, which have application to the amendment although the decision antedated it: "Defendants or their insurance companies should not be permitted to furnish or even suggest an attorney to carry on the necessary proceedings for the effectuation of settlement agreements that are made through adjusters and parents or others who are supposed to act for the benefit of infants. No matter how scrupulous and honest an attorney selected under such circumstances may be, he is, nevertheless, in effect, serving two masters and cannot do justice to both." (*De Gristina* v. *Swift & Co.*, 158 Misc. 91, 93.) That particular procedure has won other judicial denouncements too numerous to mention. It is remarkable that it survives. If I may venture a suggestion, all subterfuges should be cast aside. The best procedure, the best service, according to law, is none too good for the aggrieved infant. Require that he appear in all litigation by an attorney of his choice or that of his guardian, the court to approve of the compensation. Fear that such rule would deprive a litigant of the right of appearing in person should be dispelled. The guardian cannot appear. It is not his, it is the infant's case (*Edsall* v. *Vandemark,* 39 Barb. 589, *supra*). An infant cannot appear for himself any more than at a certain age, he cannot be guilty of contributory negligence.

When an infant reaches maturity and views the absence of a member of his body, reflects upon some hideous disfigurement or struggles along in his crippled state, he may want the court to account for its stewardship as he weighs the money that was paid into his fund against his affliction. That he will be satisfied with his lot is not to be expected. The least comfort to which he is entitled is to know by unimpeachable court records that his claim received studied consideration. He will be a disgruntled person all his life if upon investigation he learns that he spent his day in court as a bewildered litigant in what he, his relatives and friends, might well term a " framed-up law suit ". Was not the lawyer he had the defendant's lawyer too? A square deal in court was never conceived under such mismating of attorney and client.

We of the court, jealous of the welfare of that precious heritage, the children of the State, the men and women of tomorrow, should never be compelled to blush for shame or make long-winded excuses, when one who was the subject of litigation during his infancy, which resulted in a settlement, asks " How come? " Our simple answer should be, " We took care of your money; kept it invested; it is yours with interest — every

cent of it,* you were attended by an accredited member of the Bar; go to him; he was paid to represent you; he will advise you of what happened in your case; the records of your case in this court are understandable and open for your inspection; the settlement was approved by the court; it was proper ''. When we of the courts are in a position to speak with that clarity and conviction, then and only then will the court have discharged its full obligation to its wards and more important, will it have heeded the command of the common law '' to protect those who are unable to care for themselves.''

This application is denied because there exists no properly instituted action to be settled (Rules Civ. Prac., rule 294; Civ. Prac. Act, § 546; *Fisher* v. *Stilson,* 9 Abb. Prac. 33, 34) and because that part of rule 294, referred to herein as the '' amendment '', is contrary to the common law, not supported by any statute, and therefore, not enforcible. If the guardians will commence suits, sponsored by a lawyer of their own choosing, I will immediately consider any proper application to settle this litigation.

It must be stressed that the attorneys acting on this application made their position clear in the petition. They have not been and should not be criticized, for they followed the procedure provided in the amendment; the same applies to the guardians of the plaintiffs.

---

* *De Marco* v. *Seaman,* 157 Misc. 390.