OPINION OF THE COURT
Bernard Klieger, J.
Delores Barton died a resident of Queens County, New York City, in February, 1974. Limited letters of administration were issued by the Kings County Surrogate’s Court on May 13, 1974. The deceased’s heirs are two children, Andre Barton, who is an infant, and Sandra Barton, both residents of Kings County.
The estate is the beneficiary of a life insurance policy issued by defendant on the life of the deceased in 1965 in Jamaica, where she then resided. The defendant is a foreign insurance company organized under the laws of the Dominion of Canada, with a home office at Toronto, and authorized to do business in the State of New York and the Commonwealth of Jamaica.
The facts have been presented largely by stipulation or uncontroverted statements of fact in memoranda submitted by the parties.
The insured moved to New York City prior to 1969 and resided here until her death. The policy had earlier lapsed but was reinstated by deceased in Brooklyn, New York as of July 5, 1969.
The plaintiff seeks payment of the proceeds of the policy in United States dollars and in this country. The defendant resists payment here and in such currency and bases its resistance on an indorsement to the policy which reads: "Notwithstanding anything herein contained, it is hereby provided that all payments to be made hereunder, either to or by the Company, shall be made in Jamaica Pounds at the Principal Office of the Company in Jamaica.”
Jamaica converted its currency from pounds to dollars on September 8, 1969 with a conversion rate of two Jamaica dollars for one Jamaica pound. Thus the amount of insurance *953 involved was converted from 2,000 Jamaica pounds to 4,000 Jamaica dollars.
Upon proof of death of the insured defendant delivered to plaintiff a check in the sum of 4,327.47 Jamaica dollars.
The check was returned unpaid. Jamaica has an Exchange Control Law which provides that permission of the Exchange Control Authority of Jamaica be obtained for the transfer to a nonresident of Jamaica of the right to receive sums assured by a policy of insurance (Jamaica Exchange Control Law, § 30, subd [1]). No permission had been granted.
Prior to the occasion of the refusal to permit payment of the check involved in this case, defendant successfully sought the permission of the Exchange Control Authority of Jamaica to transfer outside of Jamaica proceeds of other insurance contracts made in Jamaica. After defendant attempted to obtain a currency permit to authorize the transfer to a New York account of the proceeds of its check to the plaintiff, defendant was informed by the Director of Exchange Control on January 31, 1977: "No further transfers of life insurance contracts for migrants will be approved. The migrants shall be free, however, to continue payments in Jamaica and on surrender or maturity of policy or payment of a claim, the amount shall be added to his restricted assets.”
The defendant urges that it has no other duty than to pay the proceeds to the credit of plaintiff in Jamaica, and the amount may then be added to plaintiff’s restricted assets in Jamaica.
The court disagrees. The obligation of the defendant is to pay the money to the beneficiary, not to the credit of the beneficiary in the form of restricted assets.
Our Court of Appeals long ago held in St. John v American Mut. Life Ins. Co. (13 NY 31, 38): "An insurance upon the life of an individual is a contract by which the insurer, for a certain sum of money or premium proportioned to the age, health, profession, and other circumstances of the person whose life is insured, engages that if such person shall die within the period limited in the policy, the insurer shall pay the sum specified in the policy, according to the terms thereof, to the person in whose favor such policy is granted.”
Our entire jurisprudence is imbued with the concept of construing policies to protect the insured (National Screen Serv. Corp. v United States Fid. & Guar. Co., 364 F2d 275, *954 277) and to guard that the intended beneficiary receive the proceeds. Indeed as one court put it: "It is not easy to perceive why a different rule of construction should be applied to the clause of a life insurance policy providing for the disposition of the money to become due under it from that applicable to a testamentary disposition, where both have the same object, i.e., provision for those who are the natural objects of the assured’s or the testator’s bounty.” (Dunn v New Amsterdam Cas. Co., 141 App Div 478, 479-480.)
The Government of Jamaica has itself agreed with the Government of the United States to interpose no obstacle to the acquisition by donees or heirs of the personal property of their donors or testators.
Jamaica attained full responsible status within the British Commonwealth on August 6, 1962. By an exchange of notes on August 7, 1962 between the High Commissioner for the United Kingdom in Jamaica and the Prime Minister of External Affairs and Defense of Jamaica, the Government of Jamaica agreed to assume, from August 6, 1962, all obligations and responsibilities of the United Kingdom which arise from any valid international instrument (Treaties in Force, US Dept. of State Pub. No. 8891, 1977).
Among the international instruments whose obligations were assumed by Jamaica is the Convention between the United States and the United Kingdom relating to the tenure and disposition of real and personal property, signed at Washington, D. C., March 2, 1899 and applicable to Jamaica February 9, 1901 (31 US Stat 1939).
The Convention was thereafter supplemented in a manner not here material (55 US Stat 1101).
Article II of the 1899 Convention provides (31 US Stat 1939): "The citizens or subjects of each of the Contracting Parties shall have full power to dispose of their personal property within the territories of the other, by testament, donation, or otherwise; and their heirs, legatees, and donees, being citizens or subjects of the other Contracting Party, whether resident or non-resident, shall succeed to their said personal property, and may take possession thereof either by themselves or by others acting for them, and dispose of the same at their pleasure, paying such duties only as the citizens or subjects of the country where the property lies shall be liable to pay in like cases.”
The Convention to which the United States is a party is a *955 valid treaty and the Federal Constitution declares it to be the supreme law of the land (art VI, § 2). Where a treaty affects the rights of litigants, it binds those rights and is to be regarded as much as if it were an act of Congress (United States v Schooner Peggy, 1 Cranch [5 US] 103; Whitney v Robertson, 124 US 190; Maiorano v Baltimore & Ohio R. R. Co., 213 US 208).
The application of a treaty to any case and its construction are, as with any other law, matters for the court. (Hamilton v Erie R. R. Co., 219 NY 343, 352.)
The record reveals at least one of the beneficiaries of the estate to be an infant and consequently a ward of the court.
"It might be well to consider the attitude of the court with respect to infants. The Court of Chancery in very early times took an active interest in infants’ affairs and property. It regarded itself as the representative of the King, and the King looked after all those, like infants and incompetents, not capable of taking care of themselves. There has never been the slightest relaxation of that judicial grip, but on the contrary, the court’s jurisdiction has been implemented by numerous extensions.” (Cuff, J., in Bose v Wehrli, 186 Misc 325, 327.)
In the light of the presence of an infant and all of the circumstances, under either the "grouping of contacts” test (Auten v Auten, 308 NY 155) or the "greatest interest” rationale, this court is required to apply New York law to the facts of this case. (Miller v Miller, 22 NY2d 12, 15-16.)
New York construes treaties as it does contracts and written instruments generally in order to effectuate the purpose and intent of the makers. (Matter of Lobrasciano, 38 Misc 415; Wilson v Wall, 6 Wall [73 US] 83.)
In no sense are we to consider that the Convention and the New York State law are to be reconciled. State law must yield and adjust itself to the spirit and intent of a treaty. (Ware v Hylton, 3 Dallas [3 US] 199; Hauenstein v Lynham, 100 US 483.)
Fortunately, in the case at bar, the Convention and the State law reach the same result: that the beneficiaries of estates shall receive the property of their ancestors free of added conditions. The essence of the Convention finds expression in the New York rule that parties to agreements shall "receive the fruits of the contract.” (Kirke La Shelle Co. v *956 Armstrong Co., 263 NY 79.) Mere payment satisfies neither the Convention nor the New York law, if the payment is under such a circumstance that it may not be enjoyed.
Requiring infants to leave the United States to receive the fruit of the deceased’s contract with defendant is not a condition we would impose upon a citizen of the United States, and the Convention prevents us from imposing such a condition upon the deceased’s heirs or even the plaintiff’s estate.
This court may not order changes in the contractual language at the request of defendant. It may not decree that the policy be amended to add a condition that the fruits of the agreement may tie enjoyed only in Jamaica. (Friedman v Handelman, 300 NY 188; Brown v Manufacturers Trust Co., 278 NY 317.)
"[T]he courts will not make a new contract for the parties under the guise of interpreting the writing.” (Heller v Pope, 250 NY 132, 135.)
The court is not unmindful of Johansen v Confederation Life Assn. (447 F2d 175) and the other cases upon which defendant relies. So far as the opinions reveal, none of the courts considered a treaty or convention which expressed as strongly as the 1899 Convention of the policy of devolution of property or enjoyment of donations without additional conditions. None of them dealt at all with the special attention which infants and others under disability command from courts.
On the contrary, in one case which came to the court’s attention where a beneficiary was under a disability, the court held that a failure to pay in dollars in the United States was a breach of contract.
In Confederation Life Assn. v Conte (254 So 2d 45 [Fla]) the Florida District Court of Appeals had before it a policy issued in Cuba and payable only in Cuba and in Cuban pesos. The plaintiff claimed that he left Cuba to save his life. The court said (p 46): "The Association cannot escape from its obligation by attempting to require a Cuban resident who has fled to the U.S.A. for his safety or life to return to Cuba to collect money obviously due under an insurance policy. Such conduct is clearly inequitable; cannot be countenanced and constitutes a breach of contract.”
Accordingly, judgment shall be entered for plaintiff in the *957 United States currency equivalent on January 20, 1976 of 4,327.47 Jamaica dollars, with interest from that date.